[Civ. No. 43712. First Dist., Div. Three. July 24, 1979.]

CENTRAL VALLEY CHAPTER OF 7TH STEP FOUNDATION, INC., et al., Plaintiffs and Appellants, v. EVELLE J. YOUNGER, as Attorney General, etc., et al., Defendants and Respondents.

214

**COUNSEL**

Peter E. Sheehan, Henry Hewitt, Clifford C. Sweet and Charles C. Marson for Plaintiffs and Appellants.

Steinhart, Goldberg, Feigenbaum & Ladar, Robert F. Knox, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz as Amici Curiae on behalf of Plaintiffs and Appellants.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Edward P. O'Brien, Assistant Attorney General, John T. Murphy, Karl S. Mayer and Jean M. Bordon, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**WHITE, P. J.**—Plaintiffs and appellants appeal from an order of dismissal entered after the trial court sustained the demurrer without leave to amend of defendants and respondents Evelle Younger, Attorney General of the State of California, and James R. Rasmussen, Assistant Director of the Identification and Information Branch of the California Department of Justice.[1] The gist of appellants' legal claim against respondents is that if a public employer, authorized by law to receive criminal offender record information, but prohibited by law from considering a record of an arrest which did not result in a conviction, is sent a record containing any entries of arrest which did not result in convictions, this procedure violates state and federal statutes and Constitutions. We have determined that the allegations of the complaint state a prima facie violation of the state constitutional right of privacy.

### Parties

Plaintiffs and appellants herein are four individuals and a nonprofit corporation. It is alleged in the complaint and the amendment to the complaint that appellants James Doe and Ronald Roe are residents of the City of Oakland and that they are proceeding under anonymous surnames. It is further alleged that appellants Doe and Roe bring the instant action on their own behalf and on behalf of all others similarly situated. It is alleged that appellant George D. Turner is a taxpayer of the

---

[1]An order sustaining a demurrer is nonappealable. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 850, p. 2453.) The appeal should be taken from the judgment dismissing the action. (*Id.*) An order which is a final determination of the cause is in effect a judgment though improperly labeled. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 3, 7, pp. 3183, 3186.) The order in the instant case should be deemed a judgment.

County of Alameda and the State of California. It is alleged that appellant Central Valley Chapter of 7th Step Foundation is a nonprofit corporation and one of its principal purposes and activities is to alleviate the unemployment problems of "ex-offenders." It is alleged that appellant Bart Blackburn is the executive director of appellant Central Valley Chapter of the 7th Step Foundation and is a resident of the County of Sacramento.

The complaint names as defendants, the respondents herein, James R. Rasmussen and Evelle Younger. It is alleged that Rasmussen is the Assistant Director of the Identification and Information Branch of the California Department of Justice and that Younger is the Attorney General of the State of California. The complaint also names as defendants the Alameda County Civil Service Commission, the individual members of the commission, the Director of Personnel of the County of Alameda, the Oakland Civil Service Board of Commissioners, the members of the board, and the Personnel Director of the City of Oakland. The city and county defendants are not parties to this appeal.

*Allegations contained in the complaint and the amendment to the complaint*

It is necessary to set out the allegations contained in the complaint and the amendment to the complaint since this is an appeal from a judgment entered after respondents' demurrer was sustained. ■ "In our examination of the complaint we are guided by the well settled principles governing the testing of its sufficiency by demurrer: A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; see also *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)

1. *First cause of action*

Appellant Doe, a black male, alleges that he has never been convicted of any criminal offense, but that he has been arrested on two occasions. Doe was first arrested for a violation of Penal Code section 211 (robbery) and was found not guilty after a court trial. Doe was subsequently arrested for an alleged violation of Penal Code section 459 (burglary) but

no criminal complaint was ever filed. Doe alleges that his arrest record contains entries that he was arrested on these two occasions.[2]

Appellant Doe alleges that in 1976 he applied to the county defendants for employment in a position encompassed by subdivision (a) of Labor Code section 432.7. County defendants requested respondents to forward to them Doe's arrest record and respondents complied. County defendants refused to employ Doe. Doe wishes to seek employment in the future with public employers to whom respondents will disseminate his arrest record.

Appellant Roe, a black male, alleges that he was convicted of two criminal offenses (disturbing the peace and assault with a deadly weapon) in 1969 and was convicted of a criminal offense (drunk driving) in 1976. Roe has been arrested on several occasions after which the charges were dismissed. Roe's arrest record contains 10 entries. Some of the entries include the disposition of various arrests as not resulting in convictions, while other arrest entries, which arrests did not result in convictions, show no disposition.

Appellant Roe alleges that in December of 1976, he applied with the city defendants for employment in a position encompassed by subdivision (a) of Labor Code section 432.7, specifically the position of painter. City defendants requested respondents to forward to them Roe's arrest record and respondents complied. The personnel analyst for the position Roe sought then prepared a handwritten summary of all entries, including arrests not resulting in convictions, on Roe's arrest record. The analyst and the director of personnel for the public employer then discussed the entries on Roe's arrest record, including nonconviction data, and incorrectly determined from a review of his arrest record that Roe had been convicted of several offenses when in fact he had not been so convicted. Thereafter he was mailed a printed form with a box checked that "Your conviction record disqualified you" from employment. A hearing was held before the Oakland Civil Service Board at

[2]The following designations will be used throughout this memorandum: (1) " 'State summary criminal history information' " (Pen. Code, § 11105, subd. (a)(2)(i)) commonly known as the "arrest record" or "rap sheet" will be referred to as the "arrest record"; (2) "nonconviction data" will refer to those entries on an arrest record which constitute arrests or detentions not followed by convictions; (3) "conviction data" will refer to entries on an arrest record which relate to an arrest followed by a conviction; and (4) "public employer" will refer to agenices encompassed by Penal Code section 11105, subdivisions (b)(10) or (b)(12).

which the personnel analyst, the director of personnel and several members of the board all incorrectly concluded, after reviewing Roe's arrest record, that he had been convicted of several offenses when in fact he had not been so convicted. The board ordered that Roe's application be reconsidered by the personnel director without regard to his conviction record. Roe wishes to seek employment in the future with public employers to whom respondents will disseminate his arrest record.

Appellants allege that the misinterpretation of arrest records by the city and county defendants and other public employers is a common occurrence. In addition appellants allege that few procedural protections exist to remedy rejection from employment based upon misinterpretation or even illegal consideration of arrest records. Appellants allege that there are over 400,000 members of their class in California who face severe problems in seeking employment because of widespread discrimination against "ex-offenders and individuals with arrest records in obtaining employment." It is also alleged that the rate of arrests or detentions not resulting in convictions for black persons and for poor persons exceeds the rate of such arrests or detentions for Caucasian persons and for persons with income above the official government poverty threshold. Appellants allege that appellants Doe and Roe and members of their class as a result of the practice and the policy of respondents are (1) "subjected to damage to their reputations, stigmatized, and exposed to unnecessary and unjustified public embarrassment and humiliation"; and (2) "subjected to, on some occasions, rejection from employment due to the incorrect interpretation of their arrest records by the City and County defendants and other public employers." Finally, appellants allege that "only a slight burden" would be imposed upon respondents if respondents were to delete information concerning arrests and detentions which did not result in convictions from arrest records prior to disseminating the arrest records to the city and county defendants and other public employers.

2. *Second cause of action*

In the second cause of action appellant Turner alleges that he is a resident and a taxpayer of the County of Alameda and the State of California. The second cause of action incorporates by reference the allegations of the first cause of action.

Appellant Turner alleges that respondents and their agents have either permitted or authorized the reimbursement or expenditure of public funds in enforcing and applying their alleged policy and practice of forwarding to the public employers encompassed by Penal Code section 11105, subdivisions (b)(10) and (b)(12) arrest records requested on applicants or employees for positions encompassed ·by Labor Code section 432.7, subdivision (a) without first deleting entries concerning arrests and detentions not resulting in a conviction, and without refusing to forward a record wherein all the entries pertain to arrests or detentions not resulting in convictions. Appellant Turner alleges that this policy and practice is evidenced by the allegations of appellants Doe and Roe.

Appellant Turner alleges that the expenditure of public time and money is illegal and unconstitutional. Appellant Turner further alleges that unless respondents are enjoined, these expenditures will waste state funds in an amount difficult to ascertain and impossible to recover and will therefore injure appellant Turner and other taxpayers in a manner not susceptible to redress by damages.

3. *Third cause of action*

In the third cause of action, appellants reallege allegations of the first and second causes of action. Appellants state that an actual controversy exists between appellants and respondents in that appellants contend that the alleged policies and practices of respondents are unconstitutional and void and unlawful, and respondents maintain that the alleged policies and practices are constitutional and valid and lawful. Appellants state that they desire a judicial determination of their rights and duties and a declaration as to whether or not their interpretation of the validity of respondents' policies and practices is correct.

Appellants state that such a declaration is necessary because appellants Doe, Roe and members of appellant Central Valley Chapter of the 7th Step Foundation have in the past sought employment with public employers in positions encompassed by Labor Code section 432.7, subdivision (a). Appellants also state that appellants Doe, Roe and members of appellant Central Valley Chapter of the 7th Step Foundation plan in the future to seek employment in positions encompassed by Labor Code section 432.7, subdivision (a) with public employers who will receive arrest records pursuant to the policies and practices of respondents. Appellants state that they desire such employment but do not wish

to be subjected to the alleged violation of their constitutional rights and to the alleged injuries set forth in the first cause of action.

*Statutory scheme*

In order to place the allegations of the complaint and the amendment to the complaint in perspective, it is useful at the outset to outline some of the more pertinent statutory provisions. The dissemination of arrest records and their consideration for employment purposes are chiefly governed by Labor Code section 432.7 and Penal Code section 11105.[3]

Penal Code section 11105 contains various provisions respecting the statutory duty of the Department of Justice to maintain and disseminate arrest records.[4] Subdivision (a)(1) mandates that the "Department of Justice shall maintain state summary criminal history information [arrest records]."[5] Subdivision (a)(2)(i) defines state summary criminal history information (arrest records) to mean "the master record of information compiled by the Attorney General pertaining to the identification and criminal history of any person, such as name, date of birth, physical description, date of arrests, arresting agencies and booking numbers, charges, dispositions, and similar data about such person."

Subdivision (b) of section 11105 provides that the Attorney General shall furnish arrest records to any of the persons or entities described thereafter "when needed in the course of their duties, provided that when information is furnished to assist an agency, officer, or official of state or local government, a public utility, or any entity, in fulfilling employment, certification, or licensing duties, the provisions of . . . 432.7 of the Labor Code shall apply: . . ."

Included among the persons or entities to which the Attorney General is mandated to furnish arrest records are "Any city or county, or city and county, or district, or any officer, or official thereof when access is needed

---

[3] A more comprehensive description of the various statutes concerning arrest records can be found in *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 869-875 [132 Cal.Rptr. 464, 553 P.2d 624], certiorari denied 429 U.S. 1109 [51 L.Ed.2d 562, 97 S.Ct. 1143].

[4] Hereinafter all references to code sections are to the Penal Code unless otherwise indicated.

[5] The Bureau of Identification is the unit within the Department of Justice which maintains and disseminates arrest records to law enforcement agencies and public employers.

in order to assist such agency, officer, or official in fulfilling employment, certification, or licensing duties, and when such access is specifically authorized by the city council, board of supervisors or governing board of the city, county, or district when such criminal history information is required to implement a statute, ordinance, or regulation that expressly refers to specific criminal conduct applicable to the subject person of the State summary criminal history information, and contains requirements or exclusions, or both, expressly based upon such specified criminal conduct." (§ 11105, subd. (b)(10).) Also included is "Any person or entity when access is expressly authorized by statute when such criminal history information is required to implement a statute or regulation that expressly refers to specific criminal conduct applicable to the subject person of the State summary criminal history information, and contains requirements or exclusions, or both, expressly based upon such specified criminal conduct." (§ 11105, subd. (b)(12).)

Labor Code section 432.7 contains a number of provisions respecting access, use and disclosure of arrest records. Subdivision (a) of Labor Code section 432.7 provides that no employer shall ask an applicant for employment to disclose information concerning an arrest or detention which did not result in conviction or information concerning a referral to and participation in any pretrial or posttrial diversion program. By virtue of Labor Code section 432.8, this same limitation now applies to information concerning a conviction for violation of Health and Safety Code section 11357, subdivisions (b) or (c) or a statutory predecessor thereof, or Health and Safety Code section 11360, subdivision (b), or Health and Safety Code sections 11364, 11365 or 11550 as they related to marijuana prior to January 1, 1976, or a statutory predecessor thereof, two years from the date of such a conviction. An employer is also prohibited from seeking or utilizing as a factor in determining any condition of employment any record of arrest or detention which did not result in conviction or any record regarding a referral and participation in any pretrial, or posttrial diversion program, or any record of any conviction for violation of any of the above described Health and Safety Code provisions two years from the date of such conviction. (Lab. Code, §§ 432.7, subd. (a), 432.8.)

Labor Code section 432.7 contains various exceptions to these limitations upon employers. First, an employer is not prohibited from asking an employee or applicant about an arrest for which the employee or applicant is out on bail or on his or her own recognizance pending a trial.

(Lab. Code, § 432.7, subd. (a).) An employer at a health facility, as defined in Health and Safety Code section 1250, is not prohibited from asking an applicant seeking employment for a position with regular access to patients to disclose an arrest under any section specified in section 290. (Lab. Code, § 432.7, subd. (e)(1).) Such an employer is likewise not prohibited from asking an applicant seeking employment for a position with access to drugs and medication to disclose any arrest under any section specified in Health and Safety Code section 11590. (Lab. Code, § 432.7, subd. (e)(2).) Labor Code section 432.7 does not cover any applicant seeking employment as a peace officer or for positions in law enforcement agencies with access to arrest records or for positions with the Division of Law Enforcement of the Department of Justice. (Lab. Code, § 432.7, subd. (d).)

Subdivision (f) of Labor Code section 432.7 imposes limitations upon the dissemination, receipt and possession of arrest records maintained by a local law enforcement criminal justice agency. Peace officers or employees of a law enforcement agency with access to arrest records maintained by a local law enforcement criminal justice agency and other persons authorized by law to receive arrest records maintained by a local law enforcement criminal justice agency are prohibited from knowingly disclosing any information contained therein or received therefrom pertaining to an arrest or detention or proceeding which did not result in a conviction, including information pertaining to a referral to and participation in any pretrial or posttrial diversion program, to any person not authorized by law to receive such information. (Lab. Code, § 432.7, subd. (f)(1) and (2).) The receipt or possession of criminal justice record information maintained by a local law enforcement criminal justice agency, pertaining to an arrest or other proceeding which did not result in a conviction, including information pertaining to a referral to and participation in any pretrial or posttrial diversion program, by any person, except those specifically referred to in Evidence Code section 1070 (e.g., publisher, editor or reporter), with knowledge that such receipt or possession of such information is not authorized by law is also expressly prohibited. (Lab. Code, § 432.7, subd. (f)(3).)

If an employer unintentionally violates Labor Code section 432.7, an applicant may bring an action to recover actual damages or $200, whichever is greater, plus costs and reasonable attorney's fees. An intentional violation of Labor Code section 432.7 entitles the applicant to treble actual damages or $500, whichever is greater, plus costs and

reasonable attorney's fees. An intentional violation also constitutes a misdemeanor. (Lab. Code, § 432.7, subd. (b).) These same penalties are applicable to conduct by employers in violation of Labor Code section 432.8.

Subdivision (h) of section 432.7 of the Labor Code, which is highly relevant to the issues presented in the instant case, provides: "Nothing in this section shall require the Department of Justice to remove entries relating to an arrest or detention not resulting in conviction from summary criminal history records forwarded to an employer pursuant to law."

*Issues presented*

Appellants neither seek expungement of arrest records nor challenge the constitutional propriety of disseminating arrest records for law enforcement purposes. Appellants recognize that there are numerous situations in which the fact of prior arrests, even those which did not culminate in convictions, may be legitimately employed in the criminal justice system by prosecutors, judges or other law enforcement officials. (*Loder* v. *Municipal Court, supra,* 17 Cal.3d 859, 864-868.)[6] Appellants also recognize that arrest records containing nonconviction data may be legitimately considered by employers of peace officers or personnel at a health facility as defined in Health and Safety Code section 1250. Rather, appellants contend that respondents' policy of routine dissemination of arrest records containing nonconviction data to public employers for employment evaluation purposes violates several statutory provisions as well as the constitutional guarantees of privacy, equal protection, and due process when the employer has no need for, and may not consider, nonconviction data.

---

[6]The court in *Loder* noted that the existence of arrest records containing nonconviction data served or could be used to serve the following law enforcement purposes: (1) prompt and accurate public reporting of facts and circumstances of an arrest serving the state's interest of identifying individuals suspected of having committed a crime and persuading eyewitnesses and character witnesses to testify; (2) use of the information from the arrest to investigate and solve similar crimes in the future or as an investigating tool for the discovery of further evidence; (3) a basis, when combined with other factors, to constitute probable cause to arrest; (4) a consideration in determining whether to prosecute; (5) a consideration in determining the amount of bail or whether to release a defendant on his own recognizance; and (6) a consideration in determining whether to grant probation or to release on parole.

Appellants state that this action does not challenge the constitutionality of Labor Code section 432.7, subdivision (h). Appellants contend that the language of Labor Code section 432.7, subdivision (h) is inapplicable to the dissemination of arrest records containing solely nonconviction data. Next, appellants point out that the plain language of subdivision (h) limits it to situations in which arrest records are forwarded "pursuant to law." Appellants reason that if the California Constitution does not permit the dissemination of nonconviction data to public employers, then subdivision (h) is inapplicable, not unconstitutional, because the dissemination would not be "pursuant to law." Appellants assert that subdivision (h) is permissive and in no way requires respondents to follow their challenged policy. Accordingly, appellants claim that it is the constitutionality of respondents' policy of routinely disseminating to public employers arrest records containing solely nonconviction data and arrest records containing nonconviction data and conviction data without first deleting reference to nonconviction data, and not subdivision (h) of Labor Code section 432.7, which is at issue. Finally, appellants contend that if this court were to conclude that subdivision (h) somehow requires respondents to adhere to their dissemination policy, the constitutional validity of subdivision (h) would be subject to the precise defects appellants advance against respondents' dissemination policy.

*Class action*

Appellants Doe and Roe allege that they bring this action on behalf of a class consisting of all individuals whose arrest records contain or will contain an entry relating to an arrest or detention not resulting in conviction and whose arrest records have been or will be disseminated by respondents to a public employer to assist in fulfilling employment duties where the public employer is prohibited by Labor Code section 432.7 from utilizing a record of arrest not resulting in a conviction as a factor in determining a condition of employment. Appellant Doe also alleges that he represents a subclass of the above class consisting of persons whose arrest record does not contain and will not in the future contain any entries pertaining to convictions. Finally, appellants Doe and Roe allege that they represent a subclass of all individuals in the main class who are black.

Respondents contend that the allegations do not demonstrate a proper ascertainable class as the proposed class includes individuals who have no present cause of action. Secondly, respondents contend that appellants

Doe and Roe may not maintain an action on behalf of a class whose arrest records have been sent to public employers other than the named city and county defendants. Thirdly, respondents contend that the members of the class cannot be identified because of statutory and constitutional objections. Fourthly, respondents assert that if the appellants were to win in the instant case, all other persons similarly situated would automatically benefit from appellants' efforts herein whether or not they are joined in the action. Finally, respondents urge that appellants Doe and Roe would not protect the interest of the absent class members because the absent class members might wish to seek damages for the alleged violation of their rights.

■ The class action is a product of the court of equity—codified in section 382 of the Code of Civil Procedure. It rests on considerations of necessity and convenience, adopted to prevent a failure of justice. (*Daar v. Yellow Cab Co., supra,* 67 Cal.2d 695, 703-704.) "[I]t uniformly has been held that two requirements must be met in order to sustain any class action: (1) there must be an ascertainable class [citations]; and (2) there must be a well defined community of interest in the questions of law and fact involved affecting the parties to be represented. . . ." (*Id.,* at p. 704.)

■ There is no real question but that there is an ascertainable class (all persons whose arrest record contains or will contain an entry relating to an arrest or detention not resulting in conviction and whose arrest record has been or will be disseminated by respondents to public employers). Respondents' argument that there are "substantial obstacles to identifying" the members of the class due to the confidentiality of the arrest records, does not go to the issue of whether there is an ascertainable class. Respondents "apparently [fail] to distinguish between the necessity of establishing the existence of an ascertainable class and the necessity of identifying the individual members of such class as a prerequisite to a class suit." (*Daar v. Yellow Cab Co., supra,* 67 Cal.2d 695, 706.) There is equally no question but that the questions of law and fact present in this action are common to the class. ■ These two questions are the only ones that may be addressed by the trial court in determining whether to sustain a demurrer on the ground that a class action is not proper. (*Wechsler v. Laskey-Weil, Inc.* (1974) 42 Cal.App.3d 728, 730-731 [117 Cal.Rptr. 237]; *Jensen v. Allstate Ins. Co.* (1973) 32

Cal.App.3d 789, 793 and 793, fn. 5 [108 Cal.Rptr. 498]; *Beckstead* v. *Superior Court* (1971) 21 Cal.App.3d 780, 783-784 [98 Cal.Rptr. 779].)[7]

In *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 813 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513], the Supreme Court said: "For the purpose of determining if the demurrers should have been overruled, it is sufficient that there is a reasonable possibility plaintiffs can establish a prima facie community of interest. . . . Plaintiffs' inability to do so, if that be the ultimate result, can be determined at a later stage of the proceeding." █ In *La Sala* v. *American Sav. & Loan Assn., supra,* 5 Cal.3d 864, 876, the California Supreme Court states: "When a trial court sustains a demurrer without leave to amend, we hold such a ruling an abuse of discretion if there is a reasonable possibility that the defect can be cured by amendment, . . . [¶] . . . █ In our recent decision in *Vasquez* v. *Superior Court* . . . we suggested that any such issue as to whether a suit should be continued as a class action should be determined by the trial court after notice and hearing, and recommended the procedures set forth in Civil Code section 1781 and federal rule 23." The reasons behind this policy were explained by the Court of Appeal in *Beckstead* v. *Superior Court, supra,* 21 Cal.App.3d 780, 783, as follows: "*Daar, Jones* [*Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93 (81 Cal.Rptr. 592, 460 P.2d 464)], *Vasquez,* and *La Sala* represent California's judicial policy of allowing potential class action plaintiffs to have their action measured on its merits to determine whether trying their suits as a class action would bestow the requisite benefits upon the litigants and the judicial process to justify class action litigation. In order to effect this judicial policy, the California Supreme Court has mandated that a candidate complaint for class action consideration, if at all possible, be allowed to survive the pleading stages of litigation. The wisdom of allowing survival is elementary. Class action litigation is proper whenever it may be determined that it is more beneficial to the litigants and to the judicial process to try a suit in one action rather than in several actions. To make this determination, it is necessary to balance the benefits of trying a particular suit as a class action, against the concomitant burdens.

---

[7]A defendant may also demur to a class action on the ground that a plaintiff is not a member of the class described in the complaint. (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 876 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Phillips* v. *Crocker-Citizens Nat. Bank* (1974) 38 Cal.App.3d 901, 910 [113 Cal.Rptr. 688].) Respondents contend that appellants Doe and Roe are not members of the class they seek to represent because their arrest records were sent to only the named city and county defendants. Respondents' contention misses the point. The shared injury of the class is *respondents' dissemination* of arrest records to potential employers.

It is clear that the more intimate the judge becomes with the character of the action, the more intelligently he may make the determination. If the judicial machinery encourages the decision to be made at the pleading stages and the judge decides against class litigation, he divests the court of the power to later alter that decision. However, if the decision is allowed to be deferred past the pleading stage, and even well into the trial on the merits, the balancing will be more precise. Since it is both the litigants and the judicial process who are the beneficiaries of a wise decision, the overriding interest of all affected is to allow the judge as much insight into the case as possible in making his determination. Therefore, because the sustaining of demurrers without leave to amend represents the earliest possible determination of the propriety of class action litigation, it should be looked upon with disfavor."

*Allegations of the complaint*

Respondents contend that the following allegations of the complaint are conclusionary and may not be considered in determining whether appellants have stated a cause of action: (1) arrest records are commonly misinterpreted by public employers; (2) appellants Doe and Roe and members of the class are subjected to damage to their reputation, stigmatized and exposed to unnecessary and unjustified public harassment and humiliation as a result of respondents' policy and procedures; (3) appellants Doe and Roe and members of the class are subjected to, and on some occasions, rejected from employment due to the incorrect interpretation of arrest records by public employers; (4) there is widespread discrimination against individuals with arrest records in obtaining employment; and (5) only a slight burden would be imposed upon respondents if respondents were to delete information concerning arrests and detentions which did not result in convictions from arrest records prior to forwarding them to public employers.

■ The allegations of the complaint detail the misinterpretation of Roe's arrest by at least five different employees of the City of Oakland. For the purposes of determining the sufficiency of a complaint on a demurrer, there is a sufficient foundation for the allegation that arrest records are commonly misinterpreted. ■ As to the allegation that there is discrimination against individuals with arrest records by public employers, this allegation would appear to be conclusionary; however, for the purpose of determining whether the sustaining of the demurrer was proper, it should be deemed admitted by respondents. "Recent

decisions by this court have acknowledged the considerable barriers that an arrest record interposes to employment, educational, and professional licensing opportunities, and the regrettable fact that 'so long as there exists an employable pool of persons who have not been arrested, employers will find it cheaper to make an arrest an automatic disqualification for employment'; available evidence suggests that 'employers cannot or will not distinguish between arrests resulting in conviction and arrests which do not.' " (*Utz* v. *Cullinane* (D.C.Cir. 1975) 520 F.2d 467, 480.)

Respondents contend that the allegation that only a slight burden would be placed on them is conclusionary because there are no allegations "respecting the operations and responsibilities of respondents." ■ But only a small degree of particularity is required in pleading facts when the defendants may be assumed to have knowledge of the facts equal to that possessed by plaintiffs. (*Semole* v. *Sansoucie* (1972) 28 Cal.App.3d 714, 719 [104 Cal.Rptr. 897]; see.also *White* v. *Davis* (1975) 13 Cal.3d 757, 776 [120 Cal.Rptr. 94, 533 P.2d 222].) A plaintiff "need not particularize matters 'presumptively within the knowledge of the demurring' defendant." (*Smith* v. *Kern County Land Co.* (1958) 51 Cal.2d 205, 209 [331 P.2d 645].)

■ The allegation that appellants Doe and Roe and members of the class are subjected to damage to their reputation, stigmatized and exposed to unnecessary and unjustified public harrassment and humiliation as a result of respondents' policy and procedures is not conclusionary and should be deemed admitted. Respondents contend that this allegation is conclusionary because the complaint is devoid of any allegations indicating that either the county or city defendants disclosed to any member of the general public or to any other employer any information respecting any arrests of appellants Doe or Roe. We have concluded that the respondents' policy and procedures violate appellants' right to privacy. Appellants' right to privacy is violated as soon as arrest records containing nonconviction data are disseminated to public employers who are prohibited by law from considering a record of an arrest which did not result in a conviction. Therefore, it is not necessary for the complaint to allege that information contained in arrest records has been disclosed to the general public.

*Taxpayer cause of action*

Respondents contend that state officials may not be sued by a taxpayer under section 526a of the Code of Civil Procedure and the allegations of the complaint are insufficient for a taxpayer's action under common law. Section 526a of the Code of Civil Procedure provides in pertinent part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein." ▮ Respondents claim that it is apparent from the face of section 526a of the Code of Civil Procedure that it has no application to state government or state officials.

Respondents' contention must be rejected. In *Serrano* v. *Priest, supra,* 5 Cal.3d 584, 618, footnote 38, the California Supreme Court stated: "Although plaintiff parents bring this action against state, as well as county officials, it has been held that state officers too may be sued under section 526a." (See also *Stanson* v. *Mott* (1976) 17 Cal.3d 206, 222-223 [130 Cal.Rptr. 697, 551 P.2d 1]; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 267-268 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; *Los Altos Property Owners Assn.* v. *Hutcheon* (1977) 69 Cal.App.3d 22, 27 [137 Cal.Rptr. 775].) If a taxpayer can demonstrate that a state official did authorize the improper expenditure of public funds, the taxpayer "will be entitled, at least, to a declaratory judgment to that effect; if he establishes that similar expenses are threatened in the future, he will also be entitled to injunctive relief." (*Stanson* v. *Mott, supra,* at p. 223.)

*Declaratory relief*

Respondents contend that none of the appellants are entitled to declaratory relief. ▮ Initially it should be noted that any doubts as to the availability of declaratory relief must be resolved in favor of adjudication of the controversy in cases, such as this case, that involve important constitutional questions. (See *Regents of University of California* v. *State Bd. of Equalization* (1977) 73 Cal.App.3d 660, 664 [140 Cal.Rptr. 857]; *California Water & Telephone Co.* v. *County of Los Angeles* (1967) 253 Cal.App.2d 16, 26 [61 Cal.Rptr. 618].) We have

previously noted that a taxpayer may seek declaratory relief in order to determine if a state official has authorized the improper expenditure of public funds.

Respondents contend that Central Valley Chapter of 7th Step Foundation, Inc., cannot seek declaratory relief because an association "which is not itself subject to a statute does not have standing to obtain a declaratory judgment." Respondents rely upon *Associated Boat Industries v. Marshall* (1951) 104 Cal.App.2d 21, 22-23 [230 P.2d 379], to support their contention. However, a consistent line of cases has held that *Associated Boats* cannot be read this broadly. In *Residents of Beverly Glen, Inc. v. City of Los Angeles* (1973) 34 Cal.App.3d 117, 121-122 [109 Cal.Rptr. 724], the court stated that the requirements for standing to sue are relaxed in public interest cases and held that an association which alleged that its members lived in the affected area and whose members would suffer injury if a challenged project was allowed to proceed. In *Sperry & Hutchinson Co. v. Cal. State Bd. of Pharmacy* (1966) 241 Cal.App.2d 229, 233 [50 Cal.Rptr. 489], the court held that an association which is affected but not legally subject to the challenged regulation may seek declaratory relief. The allegations of the complaint are sufficient in this regard because they demonstrate that both Central Valley Chapter of 7th Step Foundation and its members are affected by respondents' policy.

Respondents contend that because the complaint does not allege that Doe and Roe are currently applying for public employment, it is merely conjecture whether at some time in the future a controversy might arise. The complaint alleges that Doe and Roe have sought employment in the past with public employers who received arrest records and plan to seek public employment in the future, but do not wish to be subject to the violation of their rights of privacy. Thus much more than "conjecture" is involved and this is an appropriate case for declaratory relief. A person may attack the constitutionality of a statute or regulation by declaratory relief without having violated the statute or regulation. (*City of Carmel-by-the-Sea v. Young* (1970) 2 Cal.3d 259, 263 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313]; *Chas. L. Harney, Inc. v. Contractors' Bd.* (1952) 39 Cal.2d 561, 564 [247 P.2d 913]; *California Water & Telephone Co. v. County of Los Angeles, supra,* 253 Cal.App.2d 16, 24-25.) Even if we are not determining the constitutionality of subdivision (h) of Labor Code section 432.7, the same rule should be applied to a policy and practice of state officials which is attacked as unconstitutional, particularly in light of

the fact that appellants Doe and Roe have in the past been affected by respondents' policy.

*Injunctive relief*

Respondents contend that the trial court is without authority to grant the injunctive relief sought by appellants because the facts alleged in the first cause of action "are insufficient to demonstrate that respondents Younger and Rasmussen have utilized this authority [the authority contained in subdivision (h) of Labor Code section 432.7] so as to violate the constitutional rights of appellants." Since we have determined that the practice of forwarding arrest records containing nonconviction data to public employers violates appellants' right to privacy, respondents' argument must be rejected.

*Cause of action under California law*

1. *Right to privacy*

In 1972 the voters of California adopted a constitutional amendment to article I, section 1 of the California Constitution which explicitly includes the right of privacy as an inalienable right. (See *White* v. *Davis, supra,* 13 Cal.3d 757, 773.) Prior to the adoption of this amendment, California courts had found a state and federal constitutional right to privacy even though such a right was not enumerated in the California Constitution or the United States Constitution. (See *In re Lifschutz* (1970) 2 Cal.3d 415, 431-432 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1]; *City of Carmel-by-the-Sea* v. *Young, supra,* 2 Cal.3d 259, 266-268; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1103-1105 [80 Cal.Rptr. 633, 458 P.2d 713]; *People* v. *Belous* (1969) 71 Cal.2d 954, 963-964 [80 Cal.Rptr. 354, 458 P.2d 194], cert. den. 397 U.S. 915 [25 L.Ed.2d 96, 90 S.Ct. 920]; *Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 265 [57 Cal.Rptr. 623, 425 P.2d 223].)

Even prior to the adoption of the amendment to the California Constitution specifically enumerating the right of privacy as an inalienable right, California courts had consistently given a broad reading to the right of privacy. In *In re Lifschutz, supra,* 2 Cal.3d 415, the California Supreme Court gave a broad reading to the right of privacy to be afforded to psychotherapist-patient communications once the patient has initiated litigation against a third party seeking damages for mental and

emotional distress. While the psychotherapist-patient privilege is recognized by the Evidence Code, the Evidence Code recognizes in rather broad language a patient-litigant exception to the privilege. The defendant in *Lifschutz* urged the court to find that the exception required that any communication between the patient and his psychotherapist lost its privileged status once a patient initiated litigation. The court rejected this contention narrowly construing the language of the section recognizing the exception in light of the constitutional right of privacy and limited the exception solely to communications which are "directly relevant" to the conditions placed in issue by the patient. (*Id.,* at p. 435.)

In *City of Carmel-by-the-Sea* v. *Young, supra,* 2 Cal.3d 259, the Supreme Court found a financial disclosure statute overbroad and void. In doing so the court stated that the right of privacy "concerns one's feelings and one's own peace of mind" and found that "one's personal financial affairs are an essential element of such peace of mind." (*Id.,* at p. 268.)

■ The adoption of the amendment was intended to strengthen the right of privacy. "The elevation of the right to be free from invasions of privacy to constitutional stature was apparently intended to be an expansion of the privacy right. The election brochure argument states: 'The right to privacy is much more than "unnecessary wordage." It is fundamental to any free society. Privacy is not now guaranteed by our State Constitution. This simple amendment *will extend various court decisions* on privacy to insure protection of our basic rights.' (Cal. Ballot Pamp. (1972) p. 28.) (Italics added.)" (*Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825, 829 [134 Cal.Rptr. 839].)

The legislative history of the amendment was addressed by the California Supreme Court in *White* v. *Davis, supra,* 13 Cal.3d 757, 775, as follows: "Several important points emerge from this election brochure 'argument,' a statement which represents, in essence, the only 'legislative history' of the constitutional amendment available to us. First, the statement identifies the principal 'mischiefs' at which the amendment is directed: (1) 'government snooping' and the secret gathering of personal information; (2) the overbroad collection and retention of unnecessary personal information by government and business interests; (3) the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party; and (4) the lack of a reasonable check on the accuracy of

existing records. Second, the statement makes clear that the amendment does not purport to prohibit all incursion into individual privacy but rather that any such intervention must be justified by a compelling interest. Third, the statement indicates that the amendment is intended to be self-executing, i.e., that the constitutional provision, in itself, 'creates a legal and enforceable right of privacy for every Californian.' "

The court in *White* v. *Davis* further stated that "California decisions have long recognized the propriety of resorting to such election brochure arguments as an aid in construing legislative measures and constitutional amendments adopted pursuant to a vote of the people." (*Id.,* at p. 775, fn. 11.)

Since the adoption of the amendment, California courts have held that a broad range of interests were protected by the right of privacy. Thus the right was found to extend to governmental surveillance of classroom discussions and data gathering activities on students and professors (*White* v. *Davis, supra,* 13 Cal.3d 757); to the unauthorized dissemination of a student's grades to a scholarship and loan agency (*Porten* v. *University of San Francisco, supra,* 64 Cal.App.3d 825); and to the disclosure of confidential bank records (*Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977]).

The most significant case for our inquiry is *Loder* v. *Municipal Court, supra,* 17 Cal.3d 859, wherein the Supreme Court recognized that the right of privacy applies to the official retention and dissemination of arrest records containing nonconviction data but the court found the incursion into the plaintiff's right of privacy was justified by a compelling state interest in law enforcement. (See fn. 6, *ante.*) Accordingly, arrest records may be maintained by the Department of Justice to aid law enforcement and criminal justice. However, the dissemination to public employers of arrest records containing nonconviction data does not further law enforcement or criminal justice. It would therefore appear that this case falls within the third "mischief" ("the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party") at which the amendment is directed. (*White* v. *Davis, supra,* 13 Cal.3d 757, 775.) That is, information regarding nonconviction data is properly used in law enforcement but such information may not be considered by public employers. The question remains whether this intrusion into the right of privacy is justified by a compelling state interest. (*Id.,* at p. 775.)

## 2. *Compelling interest*

The right of privacy added to the California Constitution by a 1972 amendment of article I, section 1, is not absolute. However, an incursion into individual privacy must be justified by a compelling interest. (*Loder* v. *Municipal Court, supra,* 17 Cal.3d 859, 864; *White* v. *Davis, supra,* 13 Cal.3d 757, 775.) The following compelling state interest is advanced by respondents: "It is submitted that it is clearly reasonable to defer to the implicit legislative determination that subdivision (h) of Labor Code section 432.7 serves compelling state interest as it is reasonable to assume that the processing of requests from law enforcement would be impacted if respondents were required to expunge entries on records forwarded to public employers." Respondents point to subdivision (f) of section 11105 that provides, "[w]henever there is a conflict, the processing of criminal fingerprints shall take priority over the processing of applicant fingerprints." Respondents assert that the demands placed upon the Department of Justice in complying with requests for arrest records for law enforcement purposes are extensive. Respondents reason that if in addition the Department of Justice is required to delete reference to nonconviction data on arrest records forwarded to public employers, somehow the processing of requests from law enforcement would be impacted.

We believe that the allegations of the complaint and the amendment to the complaint state a prima facie violation of the state constitutional right of privacy. At trial, respondents will be free to contest any of the allegations of the complaint as well as to designate the compelling state interests upon which they rely for their intrusive conduct. (*White* v. *Davis, supra,* 13 Cal.3d 757, 776; *Porten* v. *University of San Francisco, supra,* 64 Cal.App.3d 825, 832.) However, in order to help guide the trial court, we will comment upon the "compelling state interest" advanced by respondents in this appeal.

In the trial court respondents contended that their policy served the compelling state interest of " 'the promotion of more efficient law enforcement' " because it "is clearly reasonable to assume that the efficient administration of the state criminal record information system would be hampered if each request from authorized officials or entities had to be screened to determine whether the information was sought for a purpose encompassed by Labor Code section 432.7(a) and if the

dispositions appearing on the record had to be screened and edited before complying with the requests for records."

Respondents' alleged compelling state interest must be recognized for what it is: an interest in the avoidance of administrative burden. It is now well settled that administrative burden does not constitute a compelling state interest which would justify the infringement of a fundamental right. (*Carey* v. *Population Services International* (1977) 431 U.S. 678, 691 [52 L.Ed.2d 675, 688, 97 S.Ct. 2010]; *Frontiero* v. *Richardson* (1973) 411 U.S. 677, 690-691 [36 L.Ed.2d 583, 594, 93 S.Ct. 1764]; *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 633 [22 L.Ed.2d 600, 614, 89 S.Ct. 1322]; *Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 920-921 [132 Cal.Rptr. 405, 553 P.2d 565]; *Young* v. *Gnoss* (1972) 7 Cal.3d 18, 28 [101 Cal.Rptr. 533, 496 P.2d 445], cert. den. 409 U.S. 915 [34 L.Ed.2d 176, 93 S.Ct. 236]; *Castro* v. *State of California* (1970) 2 Cal.3d 223, 242 [85 Cal.Rptr. 20, 466 P.2d 244].)

It would further appear that the existing statutory scheme assures that law enforcement requests for arrest records will not be delayed. Subdivision (f) of section 11105 insures that requests by public employers for arrest records will not interfere with law enforcement requests by mandating that priority be afforded to the latter. Sections 13175 and 13176 specifically require that all law enforcement requests for arrest records must be filled "within 72 hours of receipt by the Department of Justice."

Nor could abandonment of the challenged policy result in a significant loss of law enforcement funds. Section 11105, subdivision (e) already protects this interest by allowing respondents to charge a public employer requesting an arrest record "a fee which it determines to be sufficient to reimburse the department for the cost of furnishing such information."

Nor would it appear to increase the administrative duties to "screen" the requests for arrest records to determine which requests come from law enforcement and which requests come from public employers. This court takes judicial notice of respondents' fingerprint card which initiates a request for an arrest record. This card has a number of boxes, "one of which must be checked," indicating whether the request is for public employment, peace officer employment, state employee, law enforcement personnel and the like. Furthermore, unless respondents are violating section 11105, subdivision (f) which requires that priority be afforded

requests for criminal justice purposes, and subdivision (c)(1), which requires that a copy of an arrest record be provided to the potential employee in certain cases, screening of incoming requests already takes place.

It would therefore appear that the administrative duties would only be increased by the necessary editing of arrest records to delete reference to nonconviction data. The following quote from *Loder* v. *Municipal Court, supra,* 17 Cal.3d 859, 869-870, demonstrates that the additional administrative duties would not be overly burdensome as the arrest records must be current and reflect the disposition of an arrest: "*First.* The Legislature has provided in effect that a substantial proportion of arrests not resulting in conviction shall not be recorded as arrests but simply as 'detentions.' Penal Code section 849.5 states that 'In any case in which a person is arrested and released and no accusatory pleading is filed charging him with an offense, . . . the arrest shall not be deemed an arrest, but a detention only.' (See also § 849, subd. (c).) This directive is implemented by section 851.6, subdivision (b), which declares that in every such instance 'the person shall be issued a certificate by the law enforcement agency which arrested him describing the action as a detention,' and subdivision (d) of the same section, which mandates that 'Any reference to the action as an arrest shall be deleted from the arrest records of the arresting agency and of the Bureau of Criminal Identification and Investigation of the Department of Justice. Thereafter, any such record of the action shall refer to it as a detention.'

"*Second.* The Legislature has taken a number of steps to insure that a record of arrest or detention be complete, i.e., that it also show the final disposition of the charge. To begin with, the record of any arrest deemed to be a detention must include 'a record of release.' (§ 849.5.) More specifically, each law enforcement agency which makes an arrest and reports it to the Department of Justice or the Federal Bureau of Investigation must 'furnish a disposition report to such agencies' whenever the person is transferred to another agency or is released without charges being filed. (§ 11115.) If the arrest is thus deemed to be a detention only, the disposition report must state 'the specific reason' for the release, e.g., exoneration of the person detained, withdrawal of the complaint, or insufficient evidence to proceed. (*Ibid.*)

"In cases in which formal charges are filed, section 11116 requires the clerk of the court to furnish a disposition report to the law enforcement

agency primarily responsible for investigating the offense. The statute lists no less than 18 possible dispositions, and directs that the report specify as many as are appropriate or 'Any other disposition by which the case was terminated.' In addition, the statute provides that when the case is dismissed on any of several general grounds (e.g., pursuant to §§ 995 or 1385) the court shall state not only the disposition label but also 'the particular reasons' for the disposition.

"Such disposition reports must be forwarded to the Department of Justice and the Federal Bureau of Investigation within 30 days after the release of the person arrested or detained or the termination of court proceedings. (§ 11117.) In turn, the Department of Justice must add such reports to 'all appropriate criminal records' (*ibid.*; see also § 11116.6). And each law enforcement agency receiving such a report is required to transmit a copy thereof 'to all the bureaus to which arrest data has been furnished.' (§ 11115, last par.)"

Since we have determined that the complaint and the amendment to the complaint state a prima facie violation of the state constitutional right of privacy, we need not lengthen this opinion by discussing appellants' other contentions.[8]

The judgment (the order sustaining the demurrer without leave to amend) is reversed.

Feinberg, J., and Halvonik, J., concurred.

Petitions for a rehearing were denied August 23, 1979, and respondents' petition for a hearing by the Supreme Court was denied September 20, 1979. Clark, J., was of the opinion that the petition should be granted.

---

[8]Appellants also contend that the complaint states a claim for relief under 42 United States Code sections 1981 and 1983 and that respondents' policy and procedures deny appellants procedural due process and equal protection.