**THE SENATE OF THE LEGISLATURE OF AMERICAN SAMOA, LETULI TOLOA, in his capacity as Senate President, and TUILEFANO VAELA'A and TUANA'ITAU TUIA, in their capacities as Senators, Plaintiffs**

**v.**

**A.P. LUTALI, Governor of American Samoa, MALAETASI TOGAFAU, in his capacity as Attorney General of American Samoa, AITOFELE SUNIA, Treasurer of American Samoa, OPA JOSEPH IULI, Director of Program Planning and Budget Development, and SAPINI SIATU'U, Director of Human Resources, Defendants**

High Court of American Samoa
Trial Division

CA No. 40-94

February 5, 1996

Before RICHMOND, Associate Judge, VAIVAO, Associate Judge, and BETHAM, Associate Judge.

Counsel:        For Plaintiffs, Arthur Ripley, Jr., Counsel for the Senate, and Gata E. Gurr, Legislative Counsel
                For Defendants, Jennifer L. Joneson, Assistant Attorney General, and Elvis R.P. Patea, Assistant Attorney General

We enjoined defendants in our decision of March 1, 1995 ("our first order"), from paying salary step increments to American Samoa Government ("ASG") employees or past debts to ASG vendors from funds not properly obligated from appropriations for the fiscal years in which the transactions were budgeted, without current appropriations by the Legislature for such purposes. On March 13, 1995, defendants filed a motion for reconsideration or new trial. On March 17, 1995, we addressed, without hearing, one issue in defendants' motion ("our tax order"), declaring that ASG has no ownership interest in income tax refund monies and consequently that payment of tax refunds need not be authorized by legislative appropriation. We regularly heard the remainder of ASG's motion on October 18, 1995, with counsel for both parties present.

Defendants' pending motion essentially seeks to amend the judgment and includes the following issues: (1) a request that we define the term "vendor" as used in our first order, for purposes of defining the reach of the order to ASG expenditures; (2) whether we should vacate our first order with respect to the Attorney General, since he personally threatened no illegal action; and (3) whether our first order should be amended to deny a permanent injunction, since the effect of the injunction may be unclear and unpredictable in some circumstances, effectively giving the court continuing oversight authority over ASG's executive branch.

### 1.        Vendor

Defendants' request for a definition of the term "vendor" misses the point of both our first order and our tax order. The point we intended to make in distinguishing taxpayers from vendors in our tax order is that the payment of tax refunds is not an ASG expenditure, which requires legislative approval. It would be ludicrous to suggest that ASG could withhold funds from tax payments in excess of a taxpayer's tax liability, and then require a legislative appropriation before the taxpayer could receive a refund of money which ASG was never legally entitled to retain. Tax refunds are simply not ASG expenditures.

We did not, however, intend to either designate a "vendor" as a special type of creature for which the law has a unique application, or to make the word "vendor" a term of art. We merely said that the payment of debts to vendors falls within the category of expenditures to which the budget obligation rules of A.S.A.C. § 5.0103(16) apply. Clearly, these rules apply to a broader class of ASG expenditures than merely the payment of debts to, for example, "procurement vendors" of goods, services, or construction. This should have been evident in the fact that we also applied these rules to prevent the retroactive payment of salary step increments to ASG employees in our first order.

For the foregoing reasons, we believe that providing a specialized definition of the word "vendor" for interpretation of our rulings would be unprincipled and, therefore, deny defendants' request that we do so.

### 2. The Attorney General

T.C.R.C.P. 21 assigns the power to drop defendants to the trial court's discretion. *United Stated v. Wyoming National Bank of Casper*, 505 F.2d 1064, 1067 (10th Cir. 1974) (construing F.R.C.P. 21, which T.C.R.C.P. 21 precisely mirrors); *see also* 67A C.J.S. *Parties* § 65b. The trial court's decision will not be disturbed unless an abuse of discretion is demonstrated. *Id.* We believe the Attorney General to be a proper party based on the fact that he is responsible to ensure, to the best of his ability, that the law is followed in ASG's executive branch. Evidence in this case that he supported the Governor's intentions to make unauthorized expenditures of public funds, and that he made no effort to advise the Governor against such action, qualifies him as a proper party.

### 3. The Permanent Injunction

Defendants argue that our permanent injunction permits us to retain continuing jurisdiction over administrative processes, and to impermissibly bind the defendants' successors in office. Perhaps one could offer the same argument if we enjoined a public employee from embezzling money from the public treasury. The fact is, however, that the law already enjoins such conduct. A court injunction merely interprets the commands of the law, and strengthens them by ordering that the law not be violated in a specified case, or in a particular manner. The true question is what the law requires, and our first order plainly answered that question.

The law on these matters is clear. A court cannot, by injunction or mandamus, control executive branch officials in their legitimate exercise of discretion. *Cooke v. Iverson*, 122 N.W.2d 251, 253 (Minn. 1909). A court may, however, enjoin executive action when executive branch

167

officials assume to act in contravention of the constitution or laws applicable in the jurisdiction. *Id.* Furthermore, a court's authority extends to restraints on executive branch officials from overspending legislative appropriations. *See Webster v. Douglas County*, 77 N.W. 885, 887 (Wis. 1899). If an executive branch official has authorized an improper expenditure of public funds, a declaratory judgment is appropriate. *Central Valley Chapter v. Younger*, 157 Cal.Rptr. 117, 128 (Cal. App. 1979). If, however, the expenditure is "threatened in the future," injunctive relief is appropriate. *Id.* The action enjoined in the present case was prospective, and involved the Governor's announced intention to do business in a manner that would result in a violation of the law. Injunctive relief was, therefore, appropriate.

Additionally, we cannot neglect the factual finding of our first opinion, supported by a GAO Report, that ASG's mounting deficits were largely a result of ASG officials' unwillingness to keep expenditures within legislative appropriations, and to otherwise follow proper budgeting laws and procedures. These factual findings leave little room for doubt that an injunction is appropriate to prevent such wilful neglect of these laws in the future. We were within our legitimate powers to grant the injunction and, therefore, deny the motion to vacate it.

Defendants' motion for reconsideration or new trial is denied in every respect.

It is so ordered.