Charles NAKAO, Helen Gabriel Nakao and Ronald Dellums, Plaintiffs,

v.

Ruth RUSHEN, individually and as Director of the California State Department of Corrections; George W. Sumner, individually and as Warden of San Quentin State Prison, San Quentin, California; Lt. J. P. Campbell, individually and as Administrative Aide to the Warden, San Quentin State Prison, San Quentin, California; Sgt. K. R. Jones, individually and as 2nd Watch Sergeant for Badger Unit, San Quentin State Prison, San Quentin, California; Officers W. J. Walker and L. L. Anderson, individually and as Correctional Officers of San Quentin State Prison, San Quentin, California; The County of Contra Costa, a political subdivision of the State of California; Robert E. Jornlin, Director, Contra Costa County Social Services; Troy Grove, individually and as District Manager, West County Social Service Department; Rose Manning, individually and as Social Work Supervisor III of the Contra Costa County Department of Social Services; and Bess Walden, individually and as Social Work Supervisor II of the Contra Costa County Department of Social Services, Defendants.

No. C–81–3816 SAW.

United States District Court, N. D. California.

July 6, 1982.

Dennis Riordan, San Francisco, Cal., for plaintiffs.

George Deukmejian, Atty. Gen. of the State of Cal., James B. Cuneo, Deputy Atty. Gen., San Francisco, Cal., John B. Clausen, County Counsel, Contra Costa County, Elizabeth B. Hearey, Deputy County Counsel, Martinez, Cal., for defendants.

## MEMORANDUM AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

WEIGEL, District Judge.

Plaintiffs in this action are Charles Nakao, a former inmate of San Quentin state prison (inmate Nakao), Helen Gabriel Nakao (Mrs. Nakao), and Ronald Dellums, a United States Congressman. Defendants, identified in detail below, are various officials and employees of the State of California (state defendants) and the County of Contra Costa (county defendants). One of plaintiffs' claims is that the state defendants opened and copied certain letters sent by Congressman Dellums to inmate Nakao when Nakao was incarcerated in San Quentin. The focus of this lawsuit, however, is plaintiffs' claim that the state defendants, at the request of the county defendants, illegally searched inmate Nakao's prison cell at San Quentin. An understanding of this lawsuit requires an examination of plaintiff's allegations concerning the details surrounding this search.

Mrs. Nakao married inmate Nakao in June of 1981. Prior to the marriage, Mrs. Nakao was a Social Casework Specialist for the County of Contra Costa. In that capacity, she was assigned to the task of finding appropriate placement for the child of inmate Nakao. Plaintiffs' complaint alleges that defendants Bess Walden and Rose Manning, Social Work Supervisors for the County of Contra Costa, after learning of the marriage, decided to do "all within their power" to have Mrs. Nakao terminated from her position. To that end, they, together with Troy Grove, the District Super-

visor, wrote letters or made telephone calls to George Sumner, Warden of San Quentin, requesting that Sumner provide defendant Manning with copies of any and all correspondence on official Contra Costa County Social Service Department stationery received by inmate Nakao. Defendant Sumner authorized, defendants Lieutenant Campbell and Sergeant Jones ordered, and defendant Correctional Officers Walker and Anderson conducted a search of inmate Nakao's cell in his absence and without his knowledge. Letters then removed from the cell were allegedly provided to defendants Manning, Walden, Grove, and Robert Jornlin, the Director of the Department of Social Services for Contra Costa County. Plaintiffs claim that Mrs. Nakao's employment was terminated on the basis of information in these letters and contend that defendants' actions constituted an invasion of plaintiffs' privacy and a violation of their rights under the Fourth Amendment of the United States Constitution, and thus form the basis for a cause of action under 42 U.S.C. § 1983. They further contend that defendants had "conspired and agreed among themselves to commit these wrongs and to undertake any action necessary to hide, cover up, and justify their illegal actions," all in violation of 42 U.S.C. § 1985(3).[1]

### I. County Defendants' Motion for Summary Judgment

#### A. Plaintiffs' Claim under 42 U.S.C. § 1985(3)

Section 1985(3) of Title 42 of the United States Code provides:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons en-

1. Although the complaint also names as defendants Ruth Rushen, individually, and as Director of the California State Department of Corrections, and the County of Contra Costa, its charges against them are of a very general nature.

gaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The Supreme Court has held that § 1985(3) applies only where there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). County defendants urge that plaintiffs' § 1985(3) claim fails since, among other things, plaintiffs have made no allegations of class-based animus. The Court agrees. There is no allegation in the complaint that the actions of defendants were the result of a class-based, invidiously discriminatory intent. Plaintiffs have thus failed to state a claim upon which relief can be granted.

▮ In their reply to defendants' motion, plaintiffs assert that Mrs. Nakao was fired from her job because of a class-based animus against state prisoners. "State Prisoners" are not, however, a class entitled to § 1985(3) protection. As the Ninth Circuit noted in refusing to extend § 1985(3) protection to the class of "homosexuals":

While § 1985(3) has been liberated from the now anachronistic historical circumstances of reconstruction America, we may not uproot § 1985(3) from the principle underlying its adoption: the Governmental determination that some groups require and warrant special federal assistance in protecting their civil rights. This underlying principle must continue to determine the coverage of § 1985(3).

*DeSantis v. Pacific Telephone & Telegraph Co., Inc.*, 608 F.2d 327, 333 (9th Cir. 1979). A group requires such assistance only if there has been a Congressional determination to that effect, or if the group is "possessed of discrete, insular and immutable characteristics comparable to those characterizing classes such as race, national origin and sex." *Savina v. Gebhart*, 497 F.Supp. 65, 68 (D.Md.1980). Plaintiffs have presented no evidence or argument that either Congress or the courts have identified "state prisoners" as a class requiring or warranting special federal assistance in protecting their civil rights. The courts have not designated state prisoners as a "suspect" or "quasi-suspect" class so as to require more exacting scrutiny of classifications involving state prisoners. Indeed, it cannot be said that the class of state prisoners possesses "discrete, insular and immutable characteristics" comparable to those characterizing classes such as race, national origin and sex. The Court therefore concludes that plaintiffs have failed to demonstrate that all or any of them are members of a class entitled to § 1985(3) protection.

B. *Plaintiffs' Claim under 42 U.S.C. § 1983*

Title 42 of the United States Code, Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Plaintiffs inmate Nakao and Mrs. Nakao claim that county defendants violated their rights to privacy and their right against unreasonable searches and seizures under the Fourth Amendment by causing state defendants to undertake an illegal search of inmate Nakao's cell. Plaintiffs now admit that plaintiff Dellums has stated no cause of action against county defendants.

▮ At the outset, county defendants urge that the search of inmate Nakao's cell did not result in any violation of the Constitution or of federal law. Specifically, they argue that a prison inmate, as well as any-

one corresponding with that inmate, has no legitimate expectation that his correspondence will remain private. *Cf. Lanza v. New York*, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962). Even so, an inmate is not deprived of all Fourth Amendment protections. Jail officials can monitor an inmate's conversations and correspondence, or conduct a warrantless cell search if such intrusions upon the inmate's privacy serve a "justifiable purpose of imprisonment or prison security." *United States v. Hearst*, 563 F.2d 1331, 1345 (9th Cir.), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978); *United States v. Savage*, 482 F.2d 1371, 1372–73 (9th Cir. 1973), *cert. denied*, 415 U.S. 932, 94 S.Ct. 1446, 39 L.Ed.2d 491 (1974). *Cf. Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (inmate's mail may be censored only if censorship furthers interests of security, order or the rehabilitation of inmates). As to be considered more fully below in discussing claims against the state defendants, it cannot now be concluded whether the search of inmate Nakao's cell was justified.

County defendants next argue that they cannot be liable for the actions of the state defendants since it cannot be concluded that any request addressed to Warden Sumner for copies of correspondence to inmate Nakao from Mrs. Nakao caused, or foreseeably could have caused, the allegedly illegal search. *Cf. Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978) (causation under § 1983 established if defendant set in motion series of acts by others which defendant knew or should have known would cause others to inflict the constitutional injury). The Court disagrees. A rational trier of fact could conclude that county officials could have foreseen that the request that they be sent "all correspondence received by Mr. Nakao" on county stationery would have resulted in an unjustified search of inmate Nakao's cell.

Even if the county officials could have foreseen the search of inmate Nakao's cell, they cannot be held liable under § 1983 if they acted in "good faith." The "good faith immunity" defense is applicable if the official acts "sincerely and with a belief that he is doing right," and does not act contrary to "settled indisputable law." *Wood v. Strickland*, 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). The good faith immunity defense thus has both a subjective and an objective component. Summary judgment is particularly inappropriate when "issues of intent, good faith and other subjective feelings play dominant roles." *Pfizer, Inc. v. International Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977). The Court concludes that it cannot determine on the basis of affidavits whether defendant county officials acted in good faith, and thus summary judgment cannot be granted on this issue. Therefore, the Court need not reach the question as to whether the county officials disregarded "settled indisputable law."

■ County defendants further argue that plaintiffs have failed to state a claim against defendants Jornlin and the County of Contra Costa. The affidavits establish that the request to Warden Sumner regarding inmate Nakao's correspondence was generated by defendant Jornlin's subordinates. Plaintiffs concede that neither Jornlin nor the County can be held liable under § 1983 under a theory of *respondeat superior*. Plaintiffs also recognize that local governing bodies (such as the County), and their officials in their representative capacities (such as Jornlin), can be sued directly under § 1983 only where the "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Finally, plaintiffs do not contend that the alleged decision illegally to obtain copies of the Nakaos' correspondence was an "official" action of the County. Plaintiffs therefore have not stated a cause of action against defendants Jornlin and the County based upon the allegedly illegal search of inmate Nakao's cell.

Nevertheless, the Court concludes that defendants Jornlin and the County of Contra Costa should not now be dismissed from this suit. Plaintiffs contend that Mrs. Nakao was fired because of her marriage to inmate Nakao, and that this firing reflected official county policy. The Court cannot determine from the conflicting affidavits whether Mrs. Nakao was fired for a just cause. Although the Court holds that the circumstances surrounding Mrs. Nakao's termination do not support her claim that she has been deprived of her right to equal protection of the laws, the parties' briefs do not address the issue of whether the alleged actions of Jornlin and the County of Contra Costa deprived Mrs. Nakao of any other substantive rights protected by 42 U.S.C. § 1983.

## II. State Defendants' Motion for Summary Judgment

### A. Plaintiffs' Claim Under 42 U.S.C. § 1985(3)

For the reasons previously set forth, plaintiffs' claim under 42 U.S.C. § 1985(3) fails.

### B. Plaintiffs Nakaos' Claim Under 42 U.S.C. § 1983

State defendants contend that the search of inmate Nakao's cell was not illegal since it was justified for security reasons. Specifically, state defendants claim (1) that the information received from the county created the reasonable probability that Mrs. Nakao had directed nonofficial, and thus nonprivileged, correspondence to inmate Nakao under the guise of official correspondence and (2) that considerations of prison security demand that any nonofficial correspondence be inspected. While it is true that concern for prison security *may* have been the motivating force behind the search, that conclusion is not compelled by the evidence before the Court. A rational jury might conclude, for example, that the search was instituted for the sole purpose of assisting the County in its investigation— *i.e.*, that the search was not motivated by concerns for prison security. Plaintiffs'

burden on this issue will be a heavy one, but they should not be prevented from presenting it to a jury.

For the reasons stated earlier, state defendants' good faith immunity defense is not a proper subject for summary disposition.

### C. Plaintiffs' Claims Regarding Nakao-Dellums Correspondence

Plaintiffs Nakao and Congressman Dellums contend that state defendants opened, read and made copies of correspondence between Congressman Dellums and Nakao when the latter was an inmate. State defendants claim that there is no authority supporting the proposition that there is any congressional privilege to correspond in confidence with state prison inmates. Defendants are incorrect. The Ninth Circuit has not addressed the issue. *See Sherman v. MacDougall*, 656 F.2d 527 (9th Cir. 1981) (court refused to address issue of whether mail from attorney may be opened and read out of presence of inmate). However, *Taylor v. Sterrett*, 532 F.2d 462, 481 (5th Cir. 1976) and *Laaman v. Helgemo*, 437 F.Supp. 269, 322 (D.N.H.1977) hold that correspondence from a government official is privileged and may not be read or censored by prison authorities. Although plaintiffs cannot name the specific defendants who participated in the alleged violation concerning the Nakao-Dellums correspondence, plaintiffs' counsel declares that he expects to uncover this information during discovery. State defendants' summary judgment motion on this issue, then, must be denied. Fed.R.Civ.P. 56(f).

### D. Plaintiffs' Claims Against Defendant Ruth Rushen

Defendant Rushen has sworn that she knew nothing about the search of inmate Nakao's cell and, therefore, argues that she is entitled to summary judgment. However, plaintiffs' attorney represents that little or no discovery has transpired in this case. Further discovery might reveal, even though highly unlikely, that defendant Rushen had some involvement in the search

of inmate Nakao's cell or the opening, reading and making copies of the Nakao-Dellums correspondence. The Court therefore denies summary judgment on this issue.

### III. *Plaintiffs' Motions for Partial Summary Judgment*

Plaintiffs seek partial summary judgment against all defendants as to plaintiffs' contention that the search of inmate Nakao's cell was a violation of the Nakaos' constitutional rights. Plaintiffs' motion must be denied. As noted earlier, there are questions of fact as to whether the search was justified due to concerns of prison security, and as to whether the inquiry of the county defendants was a proximate cause of the allegedly illegal search.

Accordingly,

IT IS HEREBY ORDERED that plaintiffs' motions for partial summary judgment are denied.

IT IS FURTHER HEREBY ORDERED that all county defendants are granted summary judgment on plaintiffs' claims under 42 U.S.C. § 1985(3) and as to all of plaintiff Dellums' claims. County defendants Robert Jornlin and the County of Contra Costa are granted summary judgment on plaintiffs Nakaos' claim that the search of inmate Nakao's cell violated 42 U.S.C. § 1983.

IT IS FURTHER HEREBY ORDERED that state defendants are granted summary judgment on plaintiffs' claims under 42 U.S.C. § 1985(3).

IT IS FURTHER HEREBY ORDERED that all motions not specifically hereby granted are denied.