Charles NAKAO, et al., Plaintiffs,

v.

Ruth RUSHEN, et al., Defendants.

No. C 81–3816 SAW.

United States District Court, N.D. California.

Feb. 21, 1984.

Dennis P. Riordan, San Francisco, Cal., for plaintiffs.

John K. Van de Kamp, Atty. Gen., State of Cal. by Dane R. Gillette, Deputy Atty. Gen., San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WEIGEL, District Judge.

This case comes before the Court on the motion of plaintiffs Charles Bruce Nakao and Helen Gabriel Nakao for partial summary judgment and the cross-motion of defendant J.P. Campbell for summary judgment.

The outlines of the case have already been discussed in some detail in connection with a prior motion. *See Nakao v. Rushen (Nakao I)*, 542 F.Supp. 856 (N.D.Cal.1982). The following facts pertinent to the present motion are not in dispute. In June, 1981, plaintiff Charles Nakao was an inmate held in protective custody status at San Quentin Prison. On June 2, 1981, Charles Nakao married Helen Gabriel, who was employed in the Contra Costa County Social Services Department. Upon learning of the marriage, Troy Grove, one of Helen Nakao's superiors, became concerned that Helen Nakao's relationship with a prison inmate might have resulted in improper conduct by her. Grove, to investigate this suspicion, requested Warden George Sumner of San Quentin Prison to supply him with copies of all correspondence received by inmate Charles Nakao on Contra Costa County stationery.

Warden Sumner, acting upon this request, asked his assistant, J.P. Campbell, to look into the matter. According to Campbell, Sumner told him that Contra Costa officials were concerned that Helen Nakao might have been sending personal letters to Charles Nakao on official Contra Costa County stationery under a guise of confidentiality. Sumner gave Campbell no specific instructions for pursuing the matter.

Under standard practices at San Quentin Prison, prisoners receive two types of mail.

One is confidential mail, including correspondence received by a prisoner from his attorney or from a court. Such mail, if stamped confidential, is opened in the presence of the prisoner, shaken out, and given to him. Each item of confidential mail received by the prisoner is noted on a log kept in the mailroom. All other mail is opened by prison employees in the mailroom, where a more or less random sampling is read by guards prior to delivery. Letters sent to a prisoner from government agencies are normally treated as ordinary mail and are opened in the mailroom. However, Warden Sumner testified in his deposition that it would be "very unlikely" that mail from a government agency would be included in the mail sample read prior to delivery.

Campbell, acting pursuant to Warden Sumner's request, did not inquire whether inmate Nakao had received from his wife Helen Nakao any letters stamped confidential that might have been recorded in the mailroom log. On June 22, 1981, he ordered a correctional officer to search inmate Nakao's cell in Nakao's absence, to confiscate any correspondence or envelopes bearing a Contra Costa County letterhead, and to bring any such materials to Campbell's office. Later that day, an envelope was delivered to Campbell containing three or four envelopes with Contra Costa County letterhead and two letters on similar stationery. Campbell read each of the letters and determined that both were personal in nature and that they had no bearing on prison security. He nevertheless made photocopies of each letter and envelope and gave them to the Warden's secretary to be delivered to Contra Costa County officials. The originals he ordered returned to Nakao.

Subsequently Helen Nakao was terminated from employment by the county, allegedly due to the materials supplied the county by Campbell. Charles Nakao, Helen Nakao and another plaintiff brought suit against eleven defendants, including J.P. Campbell, seeking damages and other relief based on a number of claimed civil

rights violations. For purposes of the present motion, the only claim at issue is that of plaintiffs Charles and Helen Nakao (hereafter "plaintiffs") against defendant Campbell (hereafter "defendant") pursuant to 42 U.S.C. § 1983 for a deprivation of rights protected by the fourth and fourteenth amendments to the United States Constitution.[1] Plaintiffs move for partial summary judgment in their favor on the issue of liability. Defendant cross-moves for summary judgment in his favor on all issues.

The standard to be applied upon a motion for summary judgment is prescribed by Fed.R.Civ.P. 56(e), which provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Plaintiffs contend that the evidence properly considered on this motion admits of no possibility that a reasonable jury could conclude that defendant did not violate Charles Nakao's fourth amendment rights. *See British Airways Board v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978). Therefore, plaintiffs maintain that they are entitled to partial summary judgment. Defendant opposes this claim, and contends that there does exist a genuine issue of material fact relating to the fourth amendment violation. Defendant also maintains that he is entitled to summary judgment, because the undisputed facts establish that his conduct is protected by the qualified good faith immunity defined by the Supreme Court in *Harlow v. Fitzger-*

*ald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).[2]

This Court has already analyzed defendant's claim to good faith immunity in connection with a prior defense motion to dismiss. *Nakao v. Rushen (Nakao II)*, 545 F.Supp. 1091 (N.D.Cal.1982). It was there observed that the Supreme Court in *Harlow* eliminated the former subjective component of the immunity defense. Under current law, officials such as Campbell cannot be held liable for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Id.* at 1092 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738). The Court surveyed relevant decisions and concluded that

> [a]lthough it was once the law in this circuit that a prisoner could not reasonably consider his prison cell 'private,' ... since at least 1973 it has been established in this circuit that a warrantless search of [a] prisoner's cell violates the Fourth Amendment unless it serves a justifiable purpose of imprisonment or prison security.

*Id.* (citations omitted). Summary judgment for defendants was denied because a rational jury might conclude that the search of inmate Nakao's cell was instituted for the sole purpose of assisting the county in its investigation of Helen Nakao, and therefore did not serve any justifiable purpose of imprisonment or prison security. *Id.* at 1093. "If so," the Court concluded, "defendants' actions violated clearly established law."

■ Defendant, in asserting once more the claim to good faith immunity, essential-

---

1. The panoply of claims by all plaintiffs against all defendants has been summarized in this Court's prior opinions. *See Nakao v. Rushen (Nakao I)*, 542 F.Supp. 856 (N.D.Cal.1982); *Nakao v. Rushen (Nakao II)*, 545 F.Supp. 1091 (N.D.Cal.1982). Since *Nakao II*, the Nakao plaintiffs and the Contra Costa County defendants have settled all claims between them. *See* Stipulation and Order for Dismissal, No. C 81–3816 SAW (N.D.Cal. filed Dec. 21, 1982). Also, the Nakao plaintiffs and all state defendants except J.P. Campbell have settled all claims between them. *See* Stipulation to Dismiss Rush-

en, Sumner, Jones, Walker and Anderson, No. C 81–3816 SAW (N.D.Cal. filed Jan. 27, 1984). The parties have agreed that a settlement will be reached on plaintiff Dellums's claims, and thus his claims are outside the scope of the present motion.

2. Defendant has not raised any claim that plaintiff Helen Nakao lacks standing to maintain an action based on a violation of her husband Charles Nakao's fourth amendment rights.

ly urges the Court to reconsider its prior ruling on the subject of "clearly established law." Citing *United States v. Palmateer*, 469 F.2d 273, 274 (9th Cir.1972), and *United States v. Hitchcock*, 467 F.2d 1107, 1108 (9th Cir.1972), defendant suggests that "prison inmates have no reasonable expectation of privacy in their cells," and that therefore inmate Nakao had no fourth amendment rights to be violated by Campbell's search. But defendant cites no case since 1972 in which *Palmateer* or *Hitchcock* has been regarded by the Ninth Circuit as the governing law on the subject of prisoners' fourth amendment rights. Nor does he cite any case in which the more recent decisions previously relied upon by this Court have been questioned. Such decisions state that a prisoner's fourth amendment rights, though limited, are violated when a letter is seized from his cell and the seizure serves no "justifiable purpose of imprisonment or prison security." *E.g., United States v. Vallez*, 653 F.2d 403, 406 (9th Cir.1981);[3] *United States v. Savage*, 482 F.2d 1371, 1373 (9th Cir.1973).

Instead, defendant relies heavily upon the First Circuit's decision in *United States v. Chamorro*, 687 F.2d 1 (1st Cir.1982), to argue that the search and seizure of the letters from inmate Nakao's cell did not violate the fourth amendment. In that case, prison officials investigating a suspicion that an inmate had sent a letter bomb searched the inmate's cell and found an electrical dictionary. Inside the dictionary was an address label that was seized and subsequently used as evidence against the inmate in a criminal proceeding. The court ruled that the address label was properly allowed as evidence because the search of the inmate's cell and seizure of the label did not violate the fourth amendment. *Id.* at 5.

■ *Chamorro* is distinguishable from the present case. In *Chamorro*, the court expressly found that "[t]he search was conducted for a valid security reason," i.e., to look for explosives or other evidence of bomb manufacture. *Id.* The cell search was limited to a search for contraband; the court emphasized that there were no allegations that the inmate's personal papers, mail, or legal documents were searched. *Id.* Moreover, the court did not hold that a prisoner's cell is without fourth amendment protection. Rather, after canvassing authority from other circuits, it ruled that "an inmate retains some residuum of fourth amendment protection." *Id.* at 4. *Chamorro* therefore does not contradict the view that a seizure of a prisoner's personal letters from his cell, conducted without reference to any justifiable purpose of imprisonment or prison security, violates the fourth amendment. The Court continues to be persuaded that this view represents "clearly established law" within this circuit. If defendant Campbell's actions in ordering the search for and seizure of inmate Nakao's letters and in forwarding those letters to Contra Costa County officials were undertaken without any justifiable purpose of imprisonment or prison security, and solely for the purpose of aiding the county in its investigation of Helen Nakao, then the actions violated clearly established law and are not protected by good faith immunity.

■ To establish that defendant Campbell ordered the search and seizure without regard to any justifiable purpose, plaintiffs point out that the letters ordered seized were not stamped confidential, had been opened in accordance with standard prison policy, and did not constitute contraband under any prison regulation. These undisputed facts belie defendant's present contention that Campbell was concerned that personal letters on official stationery might

---

**3.** *Vallez* refers to the inmate's expectation of privacy in a "sealed" letter, the type which was involved in that case. There is no basis for a distinction between "sealed" and "unsealed" letters for purposes of assessing a San Quentin prisoner's fourth amendment rights. Legiti-

mate penological policies require that *all* letters to San Quentin inmates be delivered unsealed. To hold that fourth amendment rights can attach only to unsealed letters would be to hold that letters in San Quentin Prison can never be protected by the fourth amendment.

have entered the prison "under a guise of confidentiality."[4] Plaintiffs note that Warden Sumner testified that had Campbell requested permission to search the cell, xerox material and send it to Contra Costa County, permission would have been denied on the basis of state law and other privacy-related concerns.

Plaintiffs also rely on Campbell's own deposition testimony. Campbell testified that the search "wasn't really involving" inmate Nakao because Nakao was not suspected of any misconduct. Campbell agreed with plaintiffs' counsel's suggestion that Campbell did not believe that Nakao presented any security problem for the prison when he ordered the search and seizure. Campbell said nothing to indicate that the search and seizure furthered any interest of the prison except for a very general assertion that "[o]ne of our biggest escape risks in a prison is protective housing inmates."

Plaintiffs have additionally cited two persuasive, though circumstantial, indications of Campbell's intent. First, to show that Campbell was not motivated by concern about possible receipt of mail that had been improperly marked confidential, plaintiffs point out the undisputed fact that Campbell never checked the mail log to determine whether Charles Nakao had received such mail from any Contra Costa agency. Second, plaintiffs observe that Campbell, after he received the letters, read them and determined that they had no bearing on prison security or other prison business, yet nevertheless ordered them copied and forwarded to Contra Costa County officials before their return to inmate Nakao.

The foregoing evidence sufficiently establishes that defendant Campbell acted without reference to any justifiable purpose of imprisonment or prison security when he caused the search of Nakao's cell, the seizure of his letters, and the forwarding of the letters to the Contra Costa County Social Services Department.

■ Nothing in Campbell's deposition contradicts the contention that he acted with the purpose as alleged by plaintiffs. Defendant now argues, however, that a genuine issue of fact as to the existence of a justifiable purpose is created by his response to certain requests for admissions propounded by plaintiffs. In that response, it is stated, *inter alia,* that:

> Defendant further alleges that his primary purpose in ordering the search was to determine whether there had been a breach in prison security as the result of personal mail being treated as confidential attorney mail. Defendant further alleges that a secondary purpose in conducting the search and seizing the materials and transmitting them to Contra Costa County officials was to [assist] such officials in what the defendant believed to be a then pending county investigation.

This statement is contained in a pleading signed by defendant's attorney, not the defendant. It is unsworn. The statement does not meet the requirements of Fed.R. Civ.P. 56(e), and cannot, therefore, constitute a basis for finding the existence of a genuine dispute of fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158 n. 17, 90 S.Ct. 1598, 1608 n. 17, 26 L.Ed.2d 142 (1970); *British Airways Board v. Boeing Co.,* 585 F.2d at 952; *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980); *Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 273 (2d Cir.1968).

Considering all material properly presented on this Rule 56 motion, the Court concludes that there is no genuine issue of fact as to whether defendant Campbell acted in violation of clearly established law when he ordered the search of plaintiff Charles Nakao's cell, the seizure of Nakao's letters, and arranged for the transmission of those letters to the Contra Costa

---

**4.** It must be noted that prison officials maintain that letters on official stationery are treated as "confidential" as a practical matter because

County authorities.[5] Defendant's motion for summary judgment based on a good faith immunity defense must be denied. Plaintiff's motion for partial summary judgment on the issue of liability must be granted, because the uncontradicted evidence shows that defendant Campbell acted under color of state law to deprive plaintiff of rights protected by the fourth amendment. Accordingly,

IT IS HEREBY ORDERED that the motion of plaintiffs Charles Nakao and Helen Nakao for partial summary judgment is GRANTED.

IT IS FURTHER HEREBY ORDERED that the motion of defendant J.P. Campbell for summary judgment is DENIED.

even though they are routinely opened, they are very infrequently read.

**5.** Even if the response to plaintiffs' request for admission is included as credible evidence of Campbell's purpose, the record probably still establishes that Campbell's actions violated the fourth amendment. Accepting the defense statement that the search of Nakao's cell and the seizure of his letters were partially motivated by legitimate prison concerns, the subsequent action by Campbell in copying the letters and forwarding them to Contra Costa County officials clearly was not so motivated. The Ninth Circuit has specifically suggested that the photo-copying of a letter can violate the fourth amendment. *United States v. Savage,* 482 F.2d 1371, 1373 (9th Cir.1973). The circuit has also held that a failure promptly to return seized documents known to be outside the scope of the legitimate interest supporting the original seizure can violate the fourth amendment. *United States v. Tamura,* 694 F.2d 591, 596–97 (9th Cir.1982). Thus, the dissemination of plaintiff's letters after Campbell had determined that they contained nothing relating to any justifiable prison interest may have itself violated the fourth amendment. *But see United States v. Baumgarten,* 517 F.2d 1020, 1028 (8th Cir.1975).