William James CAMPBELL, Plaintiff,

v.

George SUMNER, et al., Defendants.

No. CV–R–83–211–ECR.

United States District Court,
D. Nevada.

June 11, 1984.

William James Campbell, in pro per.

D. Brian McKay, Atty. Gen., Carson City, Nev., for defendants.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

The defendants, who are eleven officials of the Nevada Department of Prisons, have moved for summary judgment on the grounds that the plaintiff's 42 U.S.C. § 1983 civil rights complaint does not state a claim based on any violation of his constitutional rights and that they enjoy immunity. In turn, the plaintiff has moved for a partial summary judgment establishing the liability of the defendants and leaving only the issue of damages for trial.

The pleadings, affidavits, exhibits and moving papers reveal that around April 1, 1982 the plaintiff, then a State prisoner, mailed a request for his own rap sheet and an affidavit in forma pauperis to Mr. William Webster, Director of the Federal Bureau of Investigation of the United States Department of Justice, in Washington, D.C. He asserts that he wanted his rap sheet so that he could have certain erroneous entries corrected. On or about June 22, 1982, one of the defendants advised the plaintiff that a brown envelope from the FBI and addressed to the plaintiff had been opened by the prison officials. The return address on the envelope was U.S. Department of Justice, Federal Bureau of Investigation, Washington, D.C. Based on the contents of the envelope, the plaintiff was charged with violating prison rules, namely, forging a document and unauthorized use of the mails. Both the envelope and its contents were used as evidence in a prison disciplinary proceeding wherein the plaintiff was convicted of the charges. The plaintiff alleges that the conviction was reported to the Nevada Parole Board, which subsequently denied his request for parole. Although the plaintiff has since been released

on parole, he contends that he suffered an additional six to eight months of incarceration because of his aforementioned conviction.

The plaintiff argues strongly that the envelope from the FBI, and its contents, were "privileged correspondence." As such, the prison officials could open the envelope only in the presence of the plaintiff to look for contraband and could not read any of its contents, according to the plaintiff. The defendants respond that the incoming envelope from the FBI was not privileged, but, rather, general correspondence which could be opened and read. In fact, the record reflects that a deputy attorney general so advised them.

The plaintiff's complaint alleges that the opening of his mail and the defendants' refusal to turn it over to him violated his following constitutional rights: First Amendment right to petition the government for redress of grievances; Fourth Amendment protection against unreasonable search and seizure and invasion of privacy; Fifth and Fourteenth Amendments' proscriptions against deprivation of property without due process; and Sixth Amendment right to unfettered access to the courts.

The Nevada Department of Prisons, at all times here material, has had in effect Procedure No. 333, which deals with inmate mail procedure. Among other things, mail between an inmate and a federal official appointed by the President of the United States is included within the definition of "Privileged Correspondence." Mail between an inmate and someone other than those approved for privileged correspondence is classified as "General Correspondence." No. 333 specifies that incoming mail shall be treated as privileged only if the name, official status and address of the sender appear on the envelope. It also declares:

"[A]ll incoming privileged correspondence may be opened and examined (not read) for cash, checks, money orders or contraband, but only in the presence of the inmate to whom the communication is addressed."

Incoming general correspondence not only may be opened and examined outside the presence of the inmate addressee, but also may be censored by the prison officials in certain instances.

Both sides agree that the facts are not in dispute. The legal issues to be resolved are, first, whether the mail from the FBI was privileged and, if so, second, whether the defendants are entitled to immunity.

■ The plaintiff in a § 1983 action must establish a deprivation of rights secured by the Constitution or laws of the United States. *Bretz v. Kelman*, 722 F.2d 503, 504 (9th Cir.1983). The thrust of the plaintiff's position here is that the defendants' actions did violate his constitutional rights.

■ The right of prison authorities to open incoming mail in the presence of inmates is established. *Wolff v. McDonnell*, 418 U.S. 539, 577, 94 S.Ct. 2963, 2985, 41 L.Ed.2d 935 (1974). Such opening is warranted by the possibility that contraband will be enclosed, even if the mail is ostensibly from an attorney. *Ibid.* The presence of the inmate when the mail is inspected is all, or more than, the Constitution requires. *Ibid.*

■ A decision to withhold delivery of a particular letter must be accompanied by procedural safeguards, because the interest of both the inmate and his correspondent in communication with each other, being grounded in the First Amendment, constitutes a liberty interest within the meaning of the Fourteenth Amendment. *Procunier v. Martinez*, 416 U.S. 396, 417–418, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974). Although the circumstance of imprisonment qualifies that interest, it is nevertheless protected from arbitrary governmental invasion. *Id.* at 418, 94 S.Ct. at 1814. *Procunier*, at p. 413, 94 S.Ct. at p. 1811, teaches that the criteria for censorship of prisoner mail are: (1) the regulation must further the governmental interests of security, order and/or rehabilitation, and (2) the limita-

tion must not be greater than necessary to protect the interest(s) involved.

A number of jurisdictions have held that particular policies or practices in handling inmate mail violated constitutional rights. For example, the opening of mail from state courts, Justice Department personnel and prosecuting officials outside the presence of the inmate was found to infringe Sixth Amendment access to the courts rights in *Carty v. Fenton,* 440 F.Supp. 1161, 1163 (M.D.Pa.1977). The same result, as to both the First and Sixth Amendments, was found to obtain as to correspondence from lawyers, courts and government officials in *Laaman v. Helgemoe,* 437 F.Supp. 269, 322 (D.N.H.1977); such mail had to be opened in the presence of the inmate. In *Craig v. Hocker,* 405 F.Supp. 656, 667 (D.Nev.1975), the Court declared that incoming mail from court officials and attorneys "may be opened in the presence of the prisoner for the detection of contraband, but cannot be read or censored by the prison officials."

A regulation that limited privileged mail to that between an inmate and any public official or agency or lawyer with respect to the inmate's criminal conviction or a complaint concerning the administration of the prison was held to be unduly restrictive in *Ramos v. Lamm,* 639 F.2d 559, 582 (10th Cir.1980). The reason was that the prison officials did not justify why civil matters should not also be encompassed within the protection afforded privileged mail.

In *Guajardo v. Estelle,* 580 F.2d 748, 757–759 (5th Cir.1978), the Court ruled that incoming mail from attorneys, courts and government agencies could be opened and inspected for contraband only in the presence of the inmate.

Despite the foregoing, the constitutional status of inmates' rights as to the handling of their mail is not clear. *Wolff v. McDonnell,* 418 U.S. 539, 575, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). The *Wolff* opinion, at pp. 575–576, 94 S.Ct. at pp. 2984–2985, interprets *Procunier v. Martinez,* discussed above, as protecting those who correspond with inmates under the First Amendment, but as not recognizing any First Amendment rights as to mail in the inmates themselves. The same conclusion as to the meaning of *Procunier v. Martinez* is repeated in *Procunier v. Navarette,* 434 U.S. 555, 563, 98 S.Ct. 855, 860, 55 L.Ed.2d 24 (1978).

The Ninth Circuit has not yet addressed the issue of whether mail, even from an attorney, may be opened and read outside the presence of the inmate-addressee. *See Nakao v. Rushen,* 542 F.Supp. 856, 861 (N.D.Cal.1982); *Sherman v. MacDougall,* 656 F.2d 527, 528 (9th Cir.1981). If the question has not been clearly resolved as to attorney mail, the uncertainty would be even more apparent as to correspondence from a government agency.

This Court does find that the defendants have not violated Department of Prisons Procedure No. 333. Government agencies are not included in the list of persons whose correspondence with an inmate is defined as privileged. The envelope in question has a return address of U.S. Department of Justice, Federal Bureau of Investigation, Washington, D.C. 20537. If it were from Director William Webster it would have been privileged as coming from a federal official appointed by the President. The return address did not so indicate, however. As it turned out, the contents were from the Identification Division of the FBI, and not from Mr. Webster.

The constitutionality of Procedure No. 333, as written, is unclear. For example, other jurisdictions have ruled that mail from a government agency may only be opened in the presence of the inmate. It is not known whether the Ninth Circuit will go that far when it finally addresses the question. It is unnecessary for this Court to resolve the issue here, because the very uncertainty answers the question of the defendants' immunity.

■■ Prison officials have qualified immunity from monetary liability under

**380**

§ 1983. *Procunier v. Navarette, supra,* 434 U.S. at 561, 98 S.Ct. at 859. The release of the plaintiff on parole has rendered moot his prayers for declaratory and injunctive relief, therefore his claims for monetary damages are all that remain at issue.

■ Once it is established that a defendant was acting pursuant to official regulations, the burden shifts to the plaintiff to show that the defendant was not acting in good faith; even if the regulations are subsequently found to be invalid, a defendant's good faith enforcement of them constitutes a defense to a § 1983 action. *Milton v. Nelson,* 527 F.2d 1158, 1160 (9th Cir.1975).

■ Government officials are shielded from liability for civil damages insofar as their conduct didn't violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982). When considering a motion for summary judgment, the court should determine whether the law was clearly established at the time of the defendants' actions; if it wasn't, the defendants could not be fairly said to know that their conduct was unlawful. *Ibid.* and *Id.* at n. 33, 102 S.Ct. at n. 33.

There has been no showing of a lack of good faith on the part of any of the defendants. Not only was the law not clearly established in June of 1982, when the envelope from the FBI arrived at the prison, it still isn't clearly established in the Ninth Circuit. The defendants have demonstrated their entitlement to qualified immunity.

IT IS, THEREFORE, HEREBY ORDERED that the plaintiff's motion for partial summary judgment be DENIED.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment be GRANTED and that the Clerk of Court shall enter a judgment dismissing the action.