Fred C. **STUCK**, Plaintiff,

v.

James E. **AIKENS**, et al., Defendants.

No. S90–409.

United States District Court,
N.D. Indiana,
South Bend Division.

Feb. 22, 1991.

Fred C. Stuck, pro se.

David A. Arthur, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

An inmate contends that his transfer, through no fault of his own, to a prison with greater security and restrictions violated his constitutional rights. The various state and prison officials that he has sued have moved for dismissal or summary judgment. The plaintiff has filed his response, supporting affidavit, and exhibits in opposition to the motion. As per its order of October 25, 1990, this court will treat the motion as one for summary judgment as a matter of law.

### I.

Plaintiff Fred Stuck is an inmate at the Indiana State Prison ("ISP"), serving a life

sentence for second degree murder. In July, 1990, he was assigned to the K Dormitory, now known as the Lakeside Correctional Unit ("LCU"), which is located outside of the walls of the ISP and is a Security Level 2 Unit.

Mr. Stuck alleges that his assignment to K dormitory was a "minimum" security classification, but because he was confined, his assignment could not have been "minimum security" within the meaning of Indiana statutes.[1] He contends, however, that his assignment afforded him the following privileges: "more frequent visits than the general population, extra phone calls, the opportunity to earn extra money, temporary leave away from prison, as well as this is a position of trust which reflects favorable upon an offender when appearing for parole release consideration." The record does not confirm Mr. Stuck's portrayal of the confinement conditions at K dormitory upon his assignment to that unit.

On May 17, 1989, DOC Commissioner James Aikens issued Executive Directive # 89–20[2] with respect to security classifications of inmates. Attached to Executive Directive # 89–20 was a list of criteria for qualification for Security Level 2 classification.

On January 25, 1990, the DOC adopted new criteria, different from those of Execu-

---

1. Indiana statutory law defines the following classifications of penal facilities and programs:

   A maximum security assignment constitutes an assignment of a convicted person to a penal facility and correctional program that are designed to insure that the person remains within a walled or fenced facility where entry and exit of any person occurs only through department supervised gates and where periodic inmate population accounting and supervision by the department occurs each day.

   A medium security assignment constitutes an assignment of a convicted person to a penal facility and correctional program that are assigned to insure that if a person is permitted outside the supervised gates of a walled or fenced facility, the department will provide continued staff supervision and the person will be accounted for throughout the day.

   A minimum security assignment constitutes an assignment of a convicted person to a

work release center or program, to intermittent service of a sentence, or to a program requiring weekly reporting to a penal facility. IND.CODE 35–38–3–6(b), (c), and (d).

2. In that document, Mr. Aikens gave the following notice:

   Effective Monday, May 22, 1989, K-dormitory at Indiana State Prison will become a medium, security facility, Security Level II-1-0. Attached is the revised criteria for offender placement at that facility.

   Offenders already living at K-dormitory may remain in K-dormitory based on continuing good conduct, work performance and adjustment.

   All future transfers to K-dormitory will be coordinated through the Office of Offender Placement at Reception–Diagnostic Center including transfers of offenders inside Indiana State Prison to K-dormitory.

   An admission and orientation unit shall function at K-dormitory to process offenders received at that facility.

tive Directive # 89–20, for assignment to LCU and other Security Level 2 assignments. The new criteria were set forth in Executive Directive # 90–1 and were to be effective February 1, 1990. As part of the newly adopted criteria, an offender must be free from ever having been convicted of "[a] Class B offense involving Death or Serious Bodily Injury as defined by IC 35–41–1–25, including the instant offense", in order to be eligible for assignment to a Security Level 2 Unit.

Pursuant to the new criteria, DOC officials reevaluated the security classification of inmates at the LCU and other Security Level 2 Units. It was determined that Mr. Stuck was no longer eligible for assignment to LCU or any other Security Level 2 Unit, and he was transferred from LCU to the main ISP facility. His Classification Hearing Summary states that the basis for transfer was, "Executive decision, sentence restriction".

## II.

Mr. Stuck brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that by changing his security classification, the defendants (1) violated his right to procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution; (2) discriminated against him on the basis of his being in a specific class of individuals in violation of 42 U.S.C. §§ 1985 and 1986 and the Thirteenth Amendment to the United States Constitution; and (3) violated his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution. He sues (1) James E. Aikens, Commissioner of the Indiana Department of Correction ("DOC"); (2) John Nunn, the DOC's Director of Adult Institutions; (3) Norman G. Owens, the DOC's Director of Classification; (4) Richard Clark, Superintendent at ISP; and (5) Timothy F. Todd, Unit Manager at ISP's Lakeside Correctional Unit.

In support of their summary judgment motion, the defendants submitted the affidavit of Norman Owens, a March 13, 1990 Classification Hearing Report regarding Mr. Stuck, and the Criteria for Consideration for Offender Assignment on Security Level–2, in effect at ISP between February 1, 1990 and October 1, 1990.

The defendants principally argue that Mr. Stuck had no liberty interest in maintaining his security classification. The defendants also state that Mr. Stuck's status was altered in the course of the adoption of a new classification system and not in an attempt to punish him. They note that before the change, Mr. Stuck had a security classification of "medium", not "minimum" as he asserts in his complaint. The defendants argue that the plaintiff's constitutional and statutory claims must fail as a matter of law because he has not established a legal right to procedural due process.

In response, Mr. Stuck contends that Indiana law establishes his liberty interest in a particular security classification. Specifically, he maintains that IND. CODE 11–10–1–2[3], 11–10–1–3[4], and

---

**3.** IND.CODE 11–10–1–2 provides:

(a) A committed criminal offender shall, within a reasonable time, be evaluated regarding:
(1) his medical, psychological, educational, vocational, economic and social condition, and history;
(2) the circumstances surrounding his present commitment;
(3) his history of criminality; and
(4) any additional relevant matters.
(b) In making the evaluation prescribed in subsection (a), the department may utilize any presentence report, any presentence memorandum filed by the offender, any reports of any presentence physical or mental examination, the record of the sentencing hearing, or other information forwarded by the sentencing court or other agency, if the information meets the department's minimum standards for criminal offender evaluation.
(c) If an offender has undergone, within two (2) years before the date of his commitment, a previous departmental evaluation under this section, the department may rely on the previous evaluation and information used at that time. However, this subsection does not deprive an offender of the right to a medical and dental examination under IC 11–10–3.

**4.** IND.CODE 11–10–1–3 provides:

(a) Upon completion of the evaluation prescribed in section 2 of this chapter and before assigning him to a facility or program, the

11–10–1–6[5] and Volume II of the DOC's Manual of Policies and Procedures[6] obli-

▮ department shall determine the appropriate degree of security (maximum, medium or minimum) for each offender as described in IC 35–38–3–6. In making that determination the department shall, in addition to other relevant information, consider:

(1) the results of the evaluation prescribed in section 2 of this chapter;

(2) the recommendations of the sentencing court; and

(3) the degree and kind of custodial control necessary for the protection of the public, staff, other confined persons, and the individual being considered.

(b) After determining the offender's security classification, the department shall assign him to a facility or program; make an initial employment, education, training, or other assignment within the facility or program; and order medical, psychiatric, psychological, or other services. In making the assignment, the department shall, in addition to other relevant information, consider:

(1) the results of the evaluation prescribed in section 2 of this chapter;

(2) the offender's security classification;

(3) the offender's need for special therapy or programs, including employment, education or training available only in specific facilities or programs;

(4) the likelihood of the offender's reintegration into the community in which the facility or program is located;

(5) the desirability of keeping the offender in a facility or program near the area in which he resided before commitment;

(6) the desires of the offender;

(7) the current population levels of the facilities or programs considered appropriate for the offender; and

(8) the length of the offender's sentence.

(c) If the department determines that a committed offender is mentally or physically incapacitated to such an extent that proper custody, care, and control cannot be provided by the department, it shall make arrangements for placement outside the department.

(d) Before assigning an offender to a facility or program, the department shall give him an opportunity to present pertinent information; discuss with him all aspects of the evaluation, classification, and assignment process; and work with him to determine a fair and appropriate assignment.

(e) If an offender is sentenced to a term of imprisonment of one (1) year or less, the department may make an assignment under this section without making the evaluation prescribed in section 2 of this chapter. In determining the length of an offender's term, consecutive terms of imprisonment shall be added together.

(f) This section does not prohibit the temporary assignment of an offender pending evaluation and classification.

gated the defendants to afford him an interview and opportunity

**5.** IND.CODE 11–10–1–6 provides:

The department shall, at least annually, review, in accord with sections 2 and 3 of this chapter, every committed offender not on parole to determine the appropriateness of his current classification and assignment and to make a classification-assignment decision based upon that review. Before making a classification-assignment decision the department shall interview the offender, discuss with him the information on which the decision will be based, and allow him to challenge the information and present pertinent information of his own. The department shall promptly notify the offender, in writing, of his classification-assignment decision and the reasons for it.

**6.** Section 2–05, Minimum Custody Assignments, Custody, Security, Control of Volume II of the Manual of Policies and Procedures provides in pertinent part:

I. Definition—Any assignment outside the walls or outside the fence in any Indiana correctional felony institution, with or without supervision, would be considered as a minimum custody assignment (trusty).

\* \* \* \* \* \*

III. General Criteria to be Considered by the Classification Committee for Determining Qualifications for Minimum Custody Assignments (Trusty):

\* \* \* \* \* \*

B. Exceptions are:

(1) Those inmates, under Public Law No. 43–1974, Burns 1974 Edition 11–7–6.1–2–Diminution of Sentence, "Under Sentence of Death or Life Imprisonment."

\* \* \* \* \* \*

D. Life Sentences:

(1) Inmates serving a life sentence will be eligible to be considered by the institutional Classification Committee for a minimum custody assignment six years from the date of admission to the Department of Corrections.

E. Any inmate meeting the minimum requirements set out in III A., B., C., and D. above shall be eligible to apply to the institutional Classification Committee for a minimum custody assignment. These criteria, however, constitute the minimum eligibility requirements; and said Committee shall take into consideration, in making its recommendation to the institution head, all factors relevant to the determination of whether or not an inmate is suitable for minimum custody assignment, and shall consider each inmate on an individual basis.

F. The above criteria are minimum requirements, and any additions or exceptions from any institution, under the control of the Department of Correction, will be approved

for a pre-deprivation review with his participation, before reclassifying his security status. Mr. Stuck has submitted the following materials with his brief in opposition to the motion for summary judgment: (1) his own affidavit; (2) Section 2–00 Custody, Security, Control of Volume II of the Manual of Policies and Procedures of the DOC, adopted August, 1974; (2) IND. CODE 11–10–1–2, 11–10–1–3, and 11–10–1–6; (3) Executive Directive # 90–1; (4) Executive Directive # 89–20; (5) Mr. Stuck's Reclassification Approval Record of February 8, 1980; and (6) letters from various individuals commending Mr. Stuck on his performance on prison work projects.

### III.

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America*, 909 F.2d 228, 231 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation*, — U.S. —, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sims v. Mulcahy*, 902 F.2d 524, 540 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). If he fails to do so, summary judgment is proper. *Tatalovich v. City of Superior*, 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Hines v. British Steel Corp.*, 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Baucher v. Eastern*

*Indiana Production Credit Ass'n*, 906 F.2d 332, 334 (7th Cir.1990).

The parties cannot rest on mere allegations in the pleadings, *Koclanakis v. Merrimack Mut. Fire Ins. Co.*, 899 F.2d 673, 675 (7th Cir.1990), or upon conclusory allegations in affidavits. *Mestayer v. Wisconsin Physicians Service Ins. Corp.*, 905 F.2d 1077, 1079 (7th Cir.1990). The court must draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Illinois Bell Telephone Co. v. Hanes and Co., Inc.*, 905 F.2d 1081, 1087 (7th Cir. 1990), as long as the inferences are reasonable. *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989).

### A.

■ Mr. Stuck has not demonstrated a fact issue that would affect the defendants' entitlement to judgment on his due process claims. While he cites the court to various statutory procedures that the defendants may or may not have afforded him during their reclassification of his security assignment, those statutes and policies create no liberty interest and, therefore, afford no cause of action on his due process claim.

The Due Process Clause protects against arbitrary governmental deprivations of "life, liberty, or property." *Colon v. Schneider*, 899 F.2d 660 (7th Cir.1990). To demonstrate a liberty interest, however, an individual must establish that he has "a legitimate claim of entitlement to it." *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989). Liberty interests deserving of constitutional protection "may arise from two sources—the Due Process Clause itself and the laws of the states." *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). A state may create a liberty interest by its

by the Executive Director of the Adult/Youth Authority and the Commissioner of Correc-

tion.

statutes. *Meachum v. Fano,* 427 U.S. 215, 229, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976); *Easter House v. Felder,* 879 F.2d 1458, 1465 (7th Cir.1989); *Shango v. Jurich,* 681 F.2d 1091, 1097 (7th Cir.1982). The crucial focus is not the source of the liberty interest, but whether a person has a legitimate interest at stake. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Although courts look to procedural guarantees granted by contract, ordinance, statute, or regulation in determining whether a property interest exists, the right to those procedural guarantees is not itself a property right. *Farmer v. Lane,* 864 F.2d 473, 478 (7th Cir.1988).

Before one can assert procedural due process rights, he must demonstrate that he possesses a "parent substantive right" that supports the procedural right. *Shango v. Jurich,* 681 F.2d at 1100–01. "A state creates a liberty interest by placing limitations on official discretion." *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). In describing such limitations, state laws must employ "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will' or 'must' be employed." *Hewitt v. Helms,* 459 U.S. at 471, 103 S.Ct. at 871; *see also Colon v. Schneider,* 899 F.2d 660 (7th Cir.1990).

Mr. Stuck contends that the State of Indiana has created an enforceable liberty interest in a prison inmate's security classification through both statutory law and procedural practices. Mr. Stuck's due process claim rests squarely on the state laws and regulations which he invokes. In Indiana, the determination of the degree of security assigned to a convicted person generally is within the province of the DOC. IND.CODE 35–38–3–5; *Barnes v. State,* 435 N.E.2d 235 (Ind.1982); *Marsh v. State,* 271 Ind. 454, 393 N.E.2d 757 (1979).

Moreover, no independent constitutional basis for the due process relief sought exists for Mr. Stuck. Inmates generally have no constitutionally protected liberty interest either in avoiding a particular security classification, *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), or being assigned to any particular security classification. *Kincaid v. Duckworth,* 689 F.2d 702 (7th Cir. 1982), *cert. denied,* 461 U.S. 946, 103 S.Ct. 2126, 77 L.Ed.2d 1305 (1983); *Love v. Duckworth,* 554 F.Supp. 1067 (N.D.Ind. 1983).

The courts of this circuit have held on several occasions that Indiana law creates no protected liberty interest in a particular custody status or classification in a confinement facility. *Kincaid v. Duckworth,* 689 F.2d at 704–705 (Indiana statutes do not provide an inmate with a protected liberty interest in minimum custody status); *Smith v. Shettle,* 690 F.Supp. 746 (N.D.Ind. 1988) (death row inmates have no liberty interest under Indiana law in assignment to any particular security classification); *Martin v. Duckworth,* 581 F.Supp. 1282, 1284 (N.D.Ind.1984) (inmates in Indiana have no state-created liberty interest in assignment to any particular security classification).

Mr. Stuck refers the court to Indiana statutes and DOC manual sections that suggest those procedures the DOC follows in assigning security classifications. However, one cannot have a property or liberty interest in mere procedures because:

> Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

*Olim v. Wakinekona,* 461 U.S. at 250–251, 103 S.Ct. at 1748; *see Doe by Nelson v. Milwaukee County,* 903 F.2d 499, 503 (7th Cir.1990); *Colon v. Schneider,* 899 F.2d at 670 n. 16; *Shango v. Jurich,* 681 F.2d at 1100–1101.

Accordingly, even if the facts were as Mr. Stuck has portrayed them and the de-

fendants failed to comply with IND.CODE 11–10–1–2, 11–10–1–3, and 11–10–1–6 and the DOC Manual on Security Classifications, the facts would not give rise to a due process claim. An Indiana prison inmate has no protectable interest in his security classification while in confinement, even though the Indiana statutory provisions in question use "shall" in setting forth the procedures for the DOC to follow in classifying inmates.

Without a protectable property interest, Mr. Stuck has no cause to challenge the defendants' conduct in reclassifying his security status. The defendants' motion for summary judgment on the plaintiff's due process claim, therefore, must be granted.

### B.

■ Mr. Stuck also raises a claim of invidious discrimination pursuant to the Thirteenth Amendment and 42 U.S.C. §§ 1985 and 1986. Mr. Stuck claims that he was a member of a class of inmates who were the victims of violations of § 1985 when their security classifications were altered. He invokes the Thirteenth Amendment as the basis for his class-based discrimination claim and § 1986 as his remedy in federal court. However, neither those statutes nor the Thirteenth Amendment offer Mr. Stuck a basis for his claim.

The predominate purpose behind § 1985 is to combat discriminatory animus against individuals as a result of their race or membership in a discrete class. *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Mears v. Town of Oxford, Md.*, 762 F.2d 368 (4th Cir.1985); *Maida v. Andros*, 710 F.Supp. 524 (D.N.J.1988). Mr. Stuck does not claim his race as a basis for the allegedly discriminatory conduct, but rather his status as an inmate in LCU. Several courts have determined, however, that state prisoners are not entitled to protection as a class under §§ 1985 and 1986. *Lewis v. Green*, 629 F.Supp. 546 (D.D.C. 1986); *Nakao v. Rushen*, 542 F.Supp. 856 (N.D.Cal.1982).

On the undisputed facts, Mr. Stuck has failed to raise a claim under § 1985, § 1986, and the Thirteenth Amendment. He does not claim to be a member of a racially protected group; his status as an inmate is no substitute for evidence of such class membership. Absent some factual allegation of a class subject to discriminatory animus, Mr. Stuck's § 1985 action fails on summary judgment. *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir. 1985); *Gleason v. McBride*, 715 F.Supp. 59 (S.D.N.Y.1988), *aff'd*, 869 F.2d 688 (2nd Cir.1989).

### C.

■ The third claim of Mr. Stuck's complaint alleges that the defendants violated his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments. While the factual basis for Mr. Stuck's Eighth Amendment challenge is a bit unclear, he appears to allege that those confinement conditions to which he was subjected upon reclassification constituted punishment in violation of the Constitution.

The Eighth Amendment prohibits punishments or conditions of confinement that: (1) involve unnecessary and wanton infliction of pain; (2) are grossly disproportionate to the severity for the crime of conviction; or (3) totally lack penological justification. *Caldwell v. Miller*, 790 F.2d 589, 600 (7th Cir.1986). Mr. Stuck has not alleged that he was subjected to any set of conditions which would fit into these three categories.

The Supreme Court in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), assumed that conditions in various prison facilities generally do not differ such as to invoke constitutional protections.

As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not itself subject an inmates' treatment by prison authorities to judicial oversight.

459 U.S. at 468, 103 S.Ct. at 869 (*quoting* *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)); *see also* *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Russ v. Young*, 895 F.2d 1149 (7th Cir.1989); *Cain v. Lane*, 857 F.2d 1139 (7th Cir.1988); *Williams v. Faulkner*, 837 F.2d 304 (7th Cir.1988), *aff'd*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Hence, Mr. Stuck's confinement in the main facilities at ISP do not give rise to an Eighth Amendment violation per se.

Mr. Stuck has failed to assert a genuine issue of material fact which could establish that his right to be free from cruel and unusual punishment was violated by the defendants. Accordingly, the court must find in favor of the defendants on this claim as well.

## IV.

For the foregoing reasons, the court now finds that the plaintiff's submissions in opposition to the defendants' motion for summary judgment have failed to raise a genuine issue of material fact as to any of the three causes of action raised in the complaint. As a matter of law, Mr. Stuck is not entitled to those constitutional protections which he seeks in his complaint. The defendants' motion for summary judgment, therefore, is GRANTED.

SO ORDERED.