**Charles and Helen NAKAO, Plaintiffs,**

v.

**Ruth RUSHEN, et al., Defendants.**

**No. C–81–3816 SAW.**

United States District Court,
N.D. California.

May 27, 1986.

Dennis P. Riordan, Nina Rivkind, Riordan & Rosenthal, San Francisco, Cal., for plaintiffs.

John K. Van De Kamp, Atty. Gen. of the State of Cal., John H. Sugiyama, Aileen Bunney, Deputys, San Francisco, Cal., for defendant.

## MEMORANDUM OPINION

WEIGEL, District Judge.

It has been established that prison authorities may search a prison cell at any time and for any reason without violating the proscriptions of the fourth amendment. *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). But, can they send letters found in such a search to third parties? That is the question raised by this suit.[1]

Charles Bruce Nakao was imprisoned at San Quentin during the time that the events giving rise to this action occurred. Helen Gabriel Nakao was an employee of the Contra Costa County Social Services Department.[2] They sue Lieutenant J.P. Campbell, of the California Department of Corrections, under 42 U.S.C. § 1983, for violating their rights under the first and fourteenth amendments to the United States Constitution. The parties have submitted the case for judgment on the record as it stands.

Charles Nakao and his former wife were convicted of the murder of his stepson. Shortly after they were incarcerated for this crime, she gave birth to another child. This child was placed in the care of the County. Responsibility for the case was

---

1. Plaintiffs have also asserted that the search of papers found in a cell, as opposed to a search of the cell itself, violates the fourth amendment. In light of the clear intendments in *Hudson,* this contention is without merit.

2. Charles Nakao is out of prison and not on parole. Helen Nakao no longer works for the County.

given to Helen Gabriel (later Helen Nakao).[3] Through her work on it, she met Charles Nakao. Their relationship developed from a professional one to a personal one. On June 2, 1981, they married.

When Helen Nakao's supervisor, Troy Grove, learned of the marriage, he suspected that, prior to Helen Nakao's termination from the assignment, she might have had a conflict of interest regarding the Nakao child dependency case. Therefore, he wrote a letter to Warden Sumner at San Quentin. In the letter, Grove asked Sumner to send him copies of all letters written by Helen Nakao to Charles Nakao on County stationery. He also asked the warden not to tell Charles Nakao of the request.

Warden Sumner asked his assistant, Lieutenant J.P. Campbell, to "look into the matter," but gave him no specific instructions. Campbell ordered Charles Nakao's cell searched outside the prisoner's presence. During the search, a number of letters written by Helen Nakao on County stationery were seized. Without the warden's knowledge, Campbell reviewed the letters, copied them, and had them sent to Troy Grove. The originals were later returned to Charles Nakao.[4] It is undisputed that had Campbell asked the warden for permission to send the letters to Mr. Grove, the request would have been denied.

On February 21, 1984, the Court granted plaintiffs' motion for summary judgment on the ground that the search of Mr. Nakao's cell for nonpenological purposes violated the fourth amendment. *Nakao v. Rushen,* 580 F.Supp. 718 (N.D.Cal.1984). Subsequently, the Supreme Court decided *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), holding that a prisoner has no reasonable expectation of privacy in his cell. Based on this decision, the Ninth Circuit remanded the case to this Court for consideration of plaintiffs' first

and fourteenth amendment claims. *Nakao v. Rushen,* 766 F.2d 410 (9th Cir.1985).

The parties have agreed that if the Court grants judgment in plaintiff's favor, plaintiffs are entitled to no actual damages.[5] As noted earlier, the parties have also agreed to submit the entire case to the Court for judgment based on the record as it now stands.

The gravamen of plaintiffs' first amendment claim is that Helen Nakao's right to correspond with Charles Nakao was chilled when Campbell provided the County with copies of her letters, and that Charles Nakao's right to receive this correspondence was similarly chilled. Plaintiffs do not argue that defendant, merely by reading the letters, abridged any of their first amendment rights.

■ In this circuit prisoners and non-prisoners have a first amendment right to correspond by mail. *Procunier v. Martinez,* 416 U.S. 396, 408, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974) (mail censorship by prison authorities implicates more than the rights of prisoners; it also affects the rights of the sender); *Storseth v. Spellman,* 654 F.2d 1349, 1355 (9th Cir.1981) (inmates retain first amendment rights not inconsistent with penological objectives, including the right to correspond). It is also well established that the first amendment prohibits certain government action that "chills" free communication. *Wolff v. McDonnell,* 418 U.S. 539, 575, 577, 94 S.Ct. 2963, 2985, 41 L.Ed.2d 935 (1974) (recognizing that having prison officials read letters from attorneys to prisoners could unconsitutionally chill first amendment rights to communicate, but finding that merely opening such letters in prisoner's presence to search for contraband would not chill these rights); *Talley v. California,* 362 U.S. 60, 63, 80 S.Ct. 536, 538, 4 L.Ed.2d 559 (1960) (in a nonprison context, requiring name of

---

3. Helen Gabriel was relieved of this assignment in October 1979.

4. Lt. Campbell testified at his deposition that all originals were returned to Charles Nakao. Charles Nakao testified at his deposition that four letters were returned to him.

5. However, they would be entitled to nominal damages, which are recoverable under 42 U.S.C. § 1983. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Thus, the case is not moot. *Lokey v. Richardson,* 600 F.2d 1265 (9th Cir.1979).

author and printer on handbills would chill freedom of expression even though no restriction was placed on content).

■ The question that this Court must address, then, is whether Helen Nakao's communication with Charles Nakao would be "chilled" or inhibited by sending a copy of her letters to the County. It is easy to see that such action might have the prohibited effect.

It is plain that a person would generally be far more circumspect in penning the contents of a personal letter that might be read by that person's supervisor, than in one that might be read by a few strangers for the purposes of insuring the security of a prison. Thus, defendant's action could well have a chilling effect on the exercise of plaintiffs' first amendment rights to the extent that the letters involved were personal.[6]

This analysis is radically different with respect to official letters written by Helen Nakao in her capacity as a County employee. Helen Nakao's communication in her official capacity could not be "chilled" by the letters' dissemination to her supervisor.[7] Insofar as the letters were official, they were not private personal communications, but rather County documents. It is difficult to understand how the employee author of an official communication from the County would be more circumspect as to the contents of that letter merely because she was aware that the County

would receive a copy of the correspondence. This is not to condone the tactics used by Campbell to obtain these letters, nor his decision to send them to the County.[8] However, in the context of official correspondence, such action does not rise to a first amendment violation.[9]

■ Plaintiffs also argue that they have been deprived of their liberty without due process of law. Their claim is grounded on the California Constitutional protection of privacy. Plaintiffs assert that this provision creates a liberty interest within the meaning of the due process clause of the fourteenth amendment, and that this interest was violated when Helen Nakao's letters to Charles Nakao were mailed to the County.

Article I section 1 of the California Constitution states that "All people are by nature free and independent, and have certain inalienable rights. Among these are ... pursuing and obtaining safety, happiness *and privacy.*" (emphasis added). The privacy interest has been identified as a "fundamental liberty" by California courts. *Fults v. Superior Court,* 88 Cal. App.3d 899, 903, 152 Cal.Rptr. 210 (1979). Thus, it is clear that California has created a substantial liberty interest. This interest is sufficiently concrete to give rise to liability against those who infringe upon it. *See, e.g., Valley Bank of Nevada v. Superior Court,* 15 Cal.3d 652, 542 P.2d 977, 125 Cal.Rptr. 553 (1975).

6. Defendant argues that he was justified in searching for the letters in order to assure prison security. Even if true, this argument misses the central issue in the case—that of the legality of sending the letters to a third party. *See Trudeau v. Wyrick,* 713 F.2d 1360, 1366 (8th Cir.1983) (prison officials may have had the right to intercept letter from plaintiff, a lay minister, to prisoner, but that interest did not extend to the letter's dissemination to the bishop of plaintiff's diocese).

7. Indeed, one of the letters bears the signature of one of Helen Nakao's supervisors, albeit not Mr. Grove.

8. Normally, of course, the fourth amendment will protect an individual from government intrusion as to his person or property to search for such items. However, apparently this fun-

damental protection does not extend to prison cells. *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

9. What distinguishes personal from official letters is the content of the documents, not such an irrelevancy as the letterhead. However, some documents may contain both official and personal information. In which category such letters would fall depends on a close examination of the documents. If a letter is substantially personal, it does not become "official" because it might also contain an item of official information. However, a letter that is almost completely official does not necessarily become "private" due to the inclusion of some innocuous *de minimus* personal note.

The purposes and extent of the privacy provision have been defined by state decisional law. One major purpose of the clause, according to the California Supreme Court, is to stop "the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose *or the disclosure of it to some third party.*" *White v. Davis,* 13 Cal.3d 757, 775, 533 P.2d 222, 120 Cal.Rptr. 94 (1975) (Tobriner, J., for a unanimous court) (emphasis added). In *Central Valley Chapter, 7th Step Found. v. Younger,* 95 Cal.App.3d 212, 236, 157 Cal.Rptr. 117 (1979), the California Court of Appeal held that the constitutional privacy protection prohibited sending police arrest records to a person's potential employers. The court noted that such dissemination did not further law enforcement or criminal justice goals, and that to send these records to a third party would be contrary to the purposes of the privacy provision.

So here, Helen Nakao had a state created interest in the confidentiality of her personal letters as to those outside the prison.[10] Therefore, if the letters were personal, sending them to Grove was an invasion of privacy, even if Campbell had a right to seize them.[11] The Nakaos clearly did not receive the process that was due in that

they received no process whatsoever.[12] This case does not require the Court to define the extent of the necessary procedure.

However, this analysis does not extend to letters that were official in character. It is unreasonable to read the California privacy provision as protecting the recipient of official County correspondence from having the author's supervisor discover the contents thereof. So here, Charles Nakao could not reasonably expect that the County would be unaware of the contents of the official letters he received. Nor could Helen Nakao assert an expectation that the letters she wrote in her official capacity could not be read by her supervisor. In fact, the opposite is true. Again, the Court does not condone the procedure, or lack thereof, used by defendant to obtain these letters.[13] But, if there is no life, liberty or property interest at stake, no procedural protections are required by the fourteenth amendment.

Surprisingly, the contents of the letters in the instant case remain a mystery. The Court asked counsel if they could stipulate as to the nature of the letters (personal or official), or, in the alternative, produce the letters for review by the Court. In re-

---

**10.** Plaintiffs have not argued that prison officials could not read Charles Nakao's incoming or outgoing mail.

**11.** The fact that Charles Nakao was in prison does not alter this analysis. California Penal Code § 2600 provides that prisoners are to be denied only such rights as are necessary in order to provide for the reasonable security of the prison or for the reasonable protection of the public. Even the broadest reading of this statute would not allow providing copies of the Nakao letters to the County without any procedural protections whatever. Further, this statute does not affect Helen Nakao's privacy interests.

**12.** Defendant does not argue that *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) bar plaintiffs' due process claim. These cases establish that a deprivation of a relatively small property interest through a random or unauthorized act, negligent or intentional, does not rise to a denial of constitutional rights if the state provides adequate postdeprivation process. The *Parratt*

analysis has not been applied to the deprivation of a liberty interest. *Parratt,* 451 U.S. at 545, 101 S.Ct. at 1918 (Blackmun, J., concurring), and this circuit has not determined whether *Parratt* should be so extended. *Haygood v. Younger,* 769 F.2d 1350, 1357 (9th Cir.) (en banc), *petition for cert. denied,* —— U.S. ——, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). The *Haygood* court noted, though, that *Parratt* and *Hudson* "dealt with relatively minor infractions of prisoners' interests in their personal property, and did not deal with official assaults, batteries or other invasions of personal liberty." *Id.* In the case at bar, a postdeprivation remedy would not suffice. Campbell's invasion of the Nakaos' privacy by sending plaintiffs' personal letters to Helen Nakao's supervisor cannot be as readily compensated by damages as can a deprivation of most property interests. This is not to say that a postdeprivation remedy would not be adequate in any § 1983 claim alleging a deprivation of liberty without due process. It is only to say that such a remedy is inadequate here.

**13.** *See supra* note 8.

sponse, counsel stipulated that two of the letters were completely official in nature.[14] However, the parties were unable to locate the other letters, and no one has a specific recollection of exactly what they contained.

There is conflicting evidence as to whether the missing letters were personal or official. Ironically, Helen Nakao and Charles Nakao stated in their depositions that the letters were official in nature, while Lt. Campbell stated in his deposition that the letters were personal. The parties have agreed that, if called to testify, Charles and Helen Nakao would state that: (1) the letters contained discussions of Helen Nakao's work as the social worker who supervised Charles Nakao's daughter; (2) some of the letters also contained personal news concerning Charles Nakao's parents and family, and Helen Nakao; and (3) when it became apparent that a romantic relationship had developed between the plaintiffs, Helen Nakao ceased discussing personal matters in her letters on County stationery and instead corresponded on her personal stationery.

Normally, this conflicting evidence would require the Court to proceed to trial to resolve the factual question. However, the parties have stipulated that no additional information could or would be ascertained at trial. Therefore, the Court proceeds on the record as it stands.

The two letters produced by the parties are clearly official in nature. As to the others, the Court finds that plaintiffs have not met and are unable to meet their burden of proving that the letters were personal.[15] Without reviewing the actual letters, or hearing the testimony of one with a good recollection of their contents, the Court cannot determine whether the personal information contained therein, *if any,* constituted a significant portion of the letters, or was merely an innocuous *de minimus* addendum to an otherwise official

communication.[16] As both parties have agreed that a trial would not clarify matters, the Court must conclude that the letters were official in nature.

Judgment shall be entered for the sole remaining defendant.

---

**14.** These letters have been produced for the Court.

**15.** Plaintiffs cannot avoid this burden by alleging that defendant has retained the letters. Charles Nakao has testified that four letters

were returned to him. The materials still allegedly missing are not relevant to plaintiffs' claim. *See* Deposition of Charles Nakao at 20–21.

**16.** *See supra* note 9.