STATE OF NEW JERSEY, PLAINTIFF, v. WANDA GILLESPIE, DEFENDANT.

Superior Court of New Jersey
Law Division (Criminal) Salem County

September 29, 1987.

*Robert Kail*, Assistant Prosecutor for the State (*Frank J. Hoerst, III*, Prosecutor).

*Martin Siegel*, Attorney for the Defendant (*Doroshow & Pasquale*, attorneys).

TELSEY, P.J. Cr.

This case involves an issue of first impression in New Jersey respecting the rights under the First, Fourth and Fourteenth Amendments of the U.S. Constitution of a sender of a letter mailed to an inmate of a state correctional facility.

On February 9, 1987, a sergeant of the Department of Corrections at Bordentown Correctional Facility opened an envelope addressed to inmate Gregg Ramos that contained a letter and two photographs depicting a female child and female adult in sexually explicit poses. Following an investigation, it was determined that the defendant, Wanda Gillespie, was the sender. She was indicted for Endangering the Welfare of a Child and brings this motion to suppress on the ground that her constitutional rights had been violated under the First, Fourth and Fourteenth Amendments.

The State contends that the letter and its contents were lawfully seized pursuant to authority of the Department of Corrections Administrative Plan Manual. The defendant contends that the manual provisions are invalid on constitutional grounds.

The issue of the constitutionality of prison mail regulations has been addressed in *Procunier v. Martinez*, 416 *U.S.* 396, 94

*S.Ct.* 1800, 40 *L.Ed.*2d 224 (1974). It held that the California prison mail regulations were invalid because the regulations were vague, censored constitutionally protected speech, and failed to provide procedural safeguards. It stated in pertinent part, "in the case of direct personal correspondence between inmates and those who have a particularized interest in communicating with them, mail censorship implicates more than the right of prisoners." *Id.* at 408, 94 *S.Ct.* at 1809. Justice Powell described the interests at stake, as follows:

Communication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impinges on the interest of each. Whatever the status of a prisoner's claim to uncensored correspondence with an outsider, it is plain that the latter's interest is grounded in the First Amendment's guarantee of freedom of speech. And this does not depend on whether the non-prisoner correspondent is the author or intended recipient of a particular letter, for the addressee as well as the sender of direct personal correspondence derives from the First and Fourteenth Amendments protection against unjustified governmental interference with the intended communications. *Id.* at 408–409, 94 *S.Ct.* at 1809.

However, in balancing the individual's rights against the security needs of the state, the court recognized that a correctional institution required censorship authority over mail as *Procunier v. Martinez* (supra) stated:

regulation authorizing mail censorship must further one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. 416 *U.S.* at 413, 94 *S.Ct.* at 1811.

In the following two cases subsequent to Procunier, the courts used the *Procunier* standards. The Eighth Circuit in *Trudeau v. Wyrick,* 713 *F.2d* 1360 (1983) decided a case of a Texas resident who brought action against the warden of a Missouri penitentiary for interfering with his letter to an inmate alleging a violation of his First Amendment rights that was the proximate cause of his losing his job. The court held that reading and censoring an inmate's personal correspondence is a limitation on the First Amendment freedoms of both

parties to the correspondence, which is only made tolerable under the limitations in *Procunier v. Martinez*. The court found for the plaintiff because the guidelines governing mail of the Missouri State Penitentiary fell short of the *Procunier* standards.

In *Nakao v. Rushen*, 635 *F.Supp.* 1362 (N.D.Cal.1986), the United States District Court held that the action of prison officials in sending copies of letters received by an inmate from a county social worker to the social worker's supervisor did not constitute a violation of the First Amendment.

Whether or not Wanda Gillespie's constitutional rights were violated depends upon an analysis of the pertinent provisions of the Department of Corrections Administrative Plan Manual to determine whether they satisfy the *Procunier* standards. For the reasons hereinafter set forth, this court finds that they are in conformity with the standards, and adherence thereto does not violate the defendant's constitutional rights. They are clear and unambiguous, and do provide procedural safeguards.

*Sec. 171* of Plan Manual defines contraband as follows:
any item, article or material found in the possession of or under the control of an inmate which is not authorized for retention or receipt.

*Sec. 171.2* of Plan Manual provides in pertinent part as follows:
any article which may be harmful or presents a threat to the security and orderly operation of the institution shall be considered contraband.
Correspondence and publications which meet any of the foregoing definitions of contraband shall be handled in accordance with standards 290 and 292.

*Standard 290.8* of Plan Manual authorizes the inspection of incoming mail, in pertinent part as follows:
Incoming correspondence shall be opened and inspected for contraband. It shall not be read unless there is reason to believe that it contains disapproved content, and then only upon the prior authorization of the superintendent or his or her designate. A confidential list of incoming correspondence which is read shall be established and maintained in the facility's investigative unit or mailroom wherever the confidentiality of the list can be protected.

*Section 290.16* provides in pertinent part as follows:
Any incoming correspondence for an inmate may be withheld in the mailroom or taken from the inmate's possession if it falls within one of the following categories:

D) the correspondence contains information concerning activities within or outside the institution which would be subject to criminal prosecution under the laws of New Jersey of the United States.

F) the correspondence contains material which based upon the experience and professional expertise of correctional administrators and judged in the context of a criminal correctional facility and its paramount interest in security, order and rehabilitation:

(1) taken as a whole appeals to a prurient interest in sex, and

(2) lacks as a whole, serious literary, artistic, political or scientific value; and

(3) depicts in a patently offensive way sexual conduct including patently offensive representation or depictions of: ultimate sexual acts; masturbation; excretory functions; lewd exhibitions of the genitals; sadism and masochism."

The sexually explicit pictures seized here clearly fall within the manual's definition of contraband. Their seizure by the prison authorities was handled in accordance with the manual's standards which set forth clear procedural safeguards ensuring that letter writers to inmates of state correctional facilities have their constitutional rights protected by reasonable standards that protect them from seizure of letters by the arbitrary whim of prison officials.

Motion to suppress is denied.